J. H. RUDDICK v. JOHN BUCHANAN, Sr., Thomas Buchanan, David Buchanan, and John Buchanan, Jr., Copartners Doing Business as J. Buchanan & Sons.

(163 N. W. 720.)

**Evidence — erroneous exclusion of — prejudicial error — none — where subsequently admitted.**

1. No prejudicial error results from the erroneous exclusion of evidence, where the same evidence is subsequently admitted.

**Cross-examination — limits of — trial judge — discretion.**

2. The limits as to relevancy on cross-examination are in a large measure within the sound discretion of the trial judge.

**Trial court — instructions — jury.**

3. Certain instructions examined and *held* to be nonprejudicial for reasons stated in the opinion.

Opinion filed June 9, 1917.

From a judgment of the District Court of Foster County, *Coffey, J.*, plaintiff appeals.

Affirmed.

*Geo. H. Stillman,* for appellant.

Duly authenticated books of account may be received in evidence. Comp. Laws 1913, § 7909; Winslow v. Dakota Lumber Co. 32 Minn. 237, 20 N. W. 145.

Note.—Refusal to allow cross-examination of a witness upon matters brought out on direct examination and relevant to the issue is a denial of an absolute right, and has geen generally held to be sufficient ground for reversal, as will be seen by an examination of the cases collated in note in 25 L.R.A.(N.S.) 683. So that the action of the court in RUDDICK V. BUCHANAN in allowing cross-examination of matters covered by the direct examination was manifestly proper.

Where goods are delivered to one person, upon the promise of another person to pay for same, the fact that the books of the seller show the account in the name of the person to whom the goods were delivered is proper to be considered upon the question as to whom credit was given, but it is not decisive against the admissibility of the books in evidence. 17 Cyc. 382, note 61; Wilkins v. Sublette, 111 Minn. 339, 126 N. W. 1089; Coleman v. Retail Lumbermen's Ins. Asso. 77 Minn. 31, 79 N. W. 588; Union Cent. L. Ins. Co. v. Prigge, 90 Minn. 370, 96 N. W. 917; Winslow v. Dakota Lumber Co. 32 Minn. 237, 20 N. W. 145; Kamm v. Rees, 100 C. C. A. 432, 177 Fed. 23.

When goods sold are charged to one person on the books, it merely raises the presumption that credit was extended on the books to such person; but such presumption may be rebutted and overcome by proof of the fact that the goods were sold and delivered, on the credit of another. Clark v. Jones, 87 Ala. 474, 6 So. 362; Lusk v. Throop, 189 Ill. 127, 59 N. E. 529; Lance v. Pearce, 101 Ind. 595, 1 N. E. 184; Burkhalter v. Farmer, 5 Kan. 477; Kaiser v. Alexander, 144 Mass. 71, 12 N. E. 209.

The assignee of a chose in action who holds the legal title to it may maintain an action thereon as the real party in interest. Rev. Codes 1905, §§ 6807, 6808, Comp. Laws 1913, §§ 7395, 7396, Assignee Equities; Seybold v. Grand Forks Nat. Bank, 5 N. D. 460, 67 N. W. 682; Queen City F. Ins. Co. v. First Nat. Bank, 18 N. D. 606, 22 L.R.A.(N.S.) 509, 120 N. W. 545.

Where goods are sold on the market, the market value is the amount due, and where plaintiff testifies to the value, and defendant offers no evidence to refute such testimony, the value as fixed by plaintiff cannot be questioned. Fried v. Olsen, 22 N. D. 381, 133 N. W. 1041; Cochrane v. National Elevator Co. 20 N. D. 169, 127 N. W. 725.

Plaintiff was entitled to interest on the account from the day his right of action accrued, and it was not proper to tell the jury they could allow interest in their discretion. Helman v. Strong, 34 N. D. 228, 157 N. W. 986; Walker & Co. v. Hoopes, 30 N. D. 398, 152 N. W. 666.

Such erroneous instructions were prejudicial. Bush v. Northern P. R. Co. 3 Dak. 444, 22 N. W. 508; Bolte v. Equitable F. Asso. 23 S. D. 240, 121 N. W. 773.

It is also error to submit to jury an hypothetical state of facts on which the evidence stands uncontradicted. 38 Cyc. 1667–1685 et seq. and note; Thomp. Trials, 2d ed. § 2319; Turner v. Osgood Art Color-type Co. 223 Ill. 629, 79 N. E. 306; Wright v. Ft. Howard, 60 Wis. 119, 50 Am. Rep. 350, 18 N. W. 750; Cronin v. Delavan, 50 Wis. 375, 7 N. W. 249; St. Louis, I. M. & S. R. Co. v. Cain, 79 Ark. 225, 95 S. W. 137; Gibbons v. Wisconsin Valley R. Co. 62 Wis. 546, 22 N. W. 533; Spaulding v. Chicago & N. W. R. Co. 33 Wis. 582; Read v. Morse, 34 Wis. 315; Cockburn v. Ashland Lumber Co. 54 Wis. 619, 12 N. W. 49; Brusberg v. Milwaukee, L. S. & W. R. Co. 55 Wis. 106, 12 N. W. 416.

*C. W. Burnham* and *T. F. McCue,* for respondents.

Books of account, to be capable of being offered in evidence, must be authenticated. Comp. Laws 1913, § 7909.

The testimony of a witness that an account is correct, is not sufficient to prove the account, where he was not cognizant of the transaction involved therein. 1 C. J. 663; Waldron v. Evans, 1 Dak. 11, 46 N. W. 607; 17 Cyc. 377; Prince v. Smith, 4 Mass. 455.

A special promise to answer for the debt, default, or miscarriage of another in cases like this one, must be in writing and subscribed by the party to be charged, or his agent. Comp. Laws 1913, § 5888, subdiv. 2; Hardman v. Bradley, 85 Ill. 162; Langdon v. Richardson, 58 Iowa, 610, 12 N. W. 622; Ruppe v. Edwards, 52 Mich. 411, 18 N. W. 193; Hurst Hardware Co. v. Goodman, 68 W. Va. 462, 32 L.R.A.(N.S.) 598, 69 S. E. 898, Ann. Cas. 1912B, 218; 29 Am. & Eng. Law, 2d ed. 180, 181, 924; 20 Cyc. 180, 181, 183; Swabora v. Throgmorton-Bruce Co. 88 Ark. 592, 115 S. W. 380.

CHRISTIANSON, J. The plaintiff sues to recover $59.90 for goods, wares, and merchandise alleged to have been sold and delivered to the defendants, at their special instance and request, by the firm of Miller & Posey, during the fall of 1913, which account it is alleged is the property of the plaintiff by virtue of assignment thereof to him by Miller & Posey. The answer is a general denial. The evidence shows that the goods in question were sold to one William Bowman, who owned and operated a threshing machine which he had purchased from the defendants. There is some testimony given by Bowman to the

effect that the defendants had an interest in the threshing machine, but his testimony as a whole does not bear out this contention, as will appear from the following testimony given by him:

Q. And what interest in the threshing rig or in its operation did J. A. Buchanan & Sons have?

A. Why, I bought the machine on payments.

Q. They owned the machine, did they?

A. Yes, sir, I run it.

Q. You ran the machine?

A. Yes, sir.

Q. Whenever they had their pay, you paid the stipulated price for it, then the machine was to be yours?

A. Yes, sir. . . .

Q. This is the machine you spoke about sold you by J. A. Buchanan & Sons?

A. Yés, sir.

Q. You had taken possession of it?

A. Yes, sir.

Q. And was there any writing at the time they delivered it to you?

A. Yes, sir.

Q. What was it?

A. Well, what kind of a writing do you mean?

Q. I don't know. That is what I was asking you for?

A. There was a writing made out, yes.

Q. You gave your promissory notes for it, did you not?

A. Yes, sir.

Q. Gave them back a mortgage, to J. A. Buchanan & Sons?

A. Yes, sir.

Q. To secure those notes?

A. Yes, sir.

The defendant Thomas Buchanan testified as follows with respect to this matter:

Q. What is the fact with reference to this threshing machine that had been mentioned in the evidence here as the Bowman rig?

A. You mean in regard to the settlement for it?

Q. Whose was it during this time?

A. Mr. Bowman's. We sold him the rig and took his notes for it. I can't say the exact amount. The last payment,—$1,800, and some odd dollars. So much a year.

Q. He made the ordinary settlement for it, gave his notes, and we took a chattel mortgage?

A. Yes, sir.

Q. Did you have any title to that rig?

A. No, sir.

Q. During any of this time?

A. No, sir.

Q. Who was it that engaged the threshing for this rig?

A. Mr. Bowman.

Q. Who was it that collected the accounts for the rig?

A. Mr. Bowman. I got the orders for so many jobs, and credited it until we got the payment.

Q. The payment that was due that Fall?

A. He did not pay the whole payment after we figured up; no, sir.

Q. You got some orders on men that he threshed for?

A. Yes, sir.

Q. Written orders?

A. Yes, sir.

Q. You collected those upon his written orders?

A. Yes, sir.

Q. Did you have any other interest in that rig?

A. No, sir.

Q. Did you have anything to say relative to the management of the rig?

A. No, sir. He hired his own men, and attended to his own rig. Bought it himself, and was to pay for it out of the rig.

Q. Under your collection arrangement, from whom did you get the orders?

A. Mr. Bowman.

The evidence further shows that in the early fall of 1913, the defendants gave a written order requesting the firm of Miller & Posey to advance certain credit to William Bowman. The order was not produced in evidence, and the evidence is in conflict as to its terms. Miller,

a member of the firm of Miller & Posey, gave certain testimony, which, while vague and indefinite, was to the effect that the order was general and not limited in amount. Thomas Buchanan, the person who prepared the order and who apparently was in full charge of the entire transaction in behalf of his firm, testified positively that the order was limited to $25, and requested Miller & Posey to advance credit to William Bowman to the extent of $25 only, and charge the same to the account of the defendants. The evidence further shows that about September 30, 1913, Thomas Buchanan, representing the defendants, and Miller, representing the firm of Miller & Posey, settled the accounts then existing between those firms, and that such settlement included goods furnished to Mr. Bowman in an account considerably exceeding $25.

The present controversy grew out of a conversation had between Thomas Buchanan and Miller immediately following such settlement.

In his brief appellant says: "Following the settlement comes the only disagreement as to the facts and the sole issue of facts which should have been submitted to the jury. Appellant insists that then respondents authorized Miller & Posey to furnish to Bowman such further provisions as he might require." In support of this contention appellant calls our attention to the following testimony of Miller, with respect to the conversation then had between him and Thomas Buchanan: "I asked him (Buchanan) if it was all right to let Bill Bowman have more goods, and he said, 'Yes, sir,' to let him have what meat and groceries he wanted." The testimony of Miller on this point is corroborated by a witness who was present at the time the conversation took place. On the other hand, Thomas Buchanan denies that the conversation was as testified to by Miller, and claims that, after the settlement had been made, Miller inquired whether defendants would take care of any account which might thereafter arise by reason of goods which might thereafter be purchased by Bowman from Miller & Posey, and Buchanan says that he (Buchanan) thereupon replied: "That any goods that he (Bowman) had an order from us for will be taken care of."

The questions of fact were submitted to the jury. The court, among others, gave the following instructions to the jury:

"The plaintiff claims by his complaint that the contract and agree-

ment which was made between Miller & Posey and J. Buchanan & Sons and that whatever agreement was made in this case, is made between those parties. The plaintiff asks to collect from J. Buchanan & Sons upon no other ground nor theory than that the transaction was one with the defendants, J. Buchanan & Sons, so it is necessary for you to find in this case, gentlemen of the jury, that there was an agreement existing at the time the goods were furnished, if they were furnished, between Miller & Posey and J. Buchanan & Sons. *If you find there was such an agreement and that J. Buchanan & Sons agreed with Miller & Posey to pay for these goods, then you should find for the plaintiff in this case.*" The jury returned a verdict in favor of the defendants. Plaintiff appeals and assigns error upon rulings in the admission and exclusion of evidence and in the instructions to the jury.

The evidence shows that the books of the firm of Miller & Posey were destroyed in a fire, and objection was offered to the account when offered in evidence, on the ground that it was merely a transcript of the book of account, and that proper foundation had not been laid for its introduction, which objection was sustained by the trial court. Subsequently Miller testified that he had personal knowledge of the account involved, and that he knew the books to contain a true and correct statement of the account; that he had compared the account offered in evidence with the books, and that it was a correct transcript of the books. The statement was then admitted in evidence without further objection. A considerable portion of appellant's brief is devoted to a discussion of the admissibility of books of account in evidence. We are satisfied that no sufficient foundation had been laid for the admission of the copy of the entries in the books of account at the time the objection was sustained. But even though the court erred in excluding the statement, the error, if any, was cured by its subsequent admission. 38 Cyc. 147 et seq.

Miller testified with respect to the assignment of the claim to the plaintiff. On cross-examination he was interrogated on this matter with respect to the time and place of the execution of the assignment and the consideration paid therefor. It is asserted that this cross-examination was *improper and constituted prejudicial error.* The

extent of cross-examination is in a large measure within the trial court's discretion.   3 Enc. Ev. 880.   The matters referred to in the cross-examination related to matters covered by the direct examination, and we are unable to see wherein the trial court abused its power in allowing such cross-examination.

Plaintiff contended that the amount of the account was not in dispute, and that the same bore interest as a matter of law at 7 per cent per annum.   It is therefore contended that the court should have instructed the jury: (1) That the amount of the account for the goods furnished to Bowman by Miller & Posey was correct: (2) that such account bore interest at the rate of 7 per cent per annum.   A sufficient answer to both propositions is that no such instructions were requested.   See, Halverson v. Lasell, 33 N. D. 613, 621, 157 N. W. 682; Buchanan v. Occident Elevator Co. 33 N. D. 346, 352, 157 N. W. 122.   And we are unable to see wherein the failure to instruct upon these matters could have prejudiced the plaintiff.   By what possible means of reasoning the failure of the court to instruct upon the question of interest could be prejudicial, in view of the verdict, is beyond comprehension.

Error is also assigned upon the court's instruction to the jury to the effect that "it is necessary for the plaintiff to show that the plaintiff is now the owner and holder of this claim."   It has been said that, in order to recover upon an assignment of a chose in action, it is essential that plaintiff establish: First, that there was a cause of action; second, that it was such a cause of action as could be assigned; and, third, that it has been assigned.   5 C. J. 1015.

The instruction challenged was abstractly correct.   It related to an issue framed by the pleadings.   No request was made for instruction withdrawing the issue covered thereby from the jury's consideration. In this case, however, it is at least doubtful if any error can be predicated on the giving of an instruction upon an issue framed by the pleadings, in the absence of a request for an appropriate instruction. See Guild v. Moore, 32 N. D. 432, 475, 155 N. W. 44.   The evidence upon the question of the assignment, while uncontradicted, was not wholly convincing; and we are agreed that the trial court committed no error in submitting the question to the jury, especially in view of

the fact that no request was made for an appropriate instruction withdrawing the same from the jury.

The judgment must be affirmed. It is so ordered.

ROBINSON, J. (dissenting). In this case the plaintiff sues to recover $59.90 for meats and groceries sold and delivered to the defendants at their request. The plaintiff claims under a written assignment made to him by Miller & Posey. The answer is a general denial. The defense was that the goods in question were sold to one Bowman, and that the sale was not for and at the request of the defendants. The plaintiff appeals from a judgment and order denying a new trial. There was no fair question on the sufficiency of the assignment of the correctness of the account. The goods were delivered to Bowman as necessary supplies to run a threshing machine in the operation of which Bowman and the defendants were jointly interested. As it seems, Bowman was competent to run a threshing machine, but he had no means to buy a machine or to operate it. The defendants owned a threshing machine and arranged with Bowman to run it. They sold the machine to him, taking back a chattel mortgage for the full amount of the purchase money, as he had no means to buy or to operate a machine. The agreement was that the defendants should pay the expense of operating the machine and receive nearly all its earnings. It was a joint venture in which Bowman and the defendants were in reality partners, and they were to receive the greater part of the profits. Hence, regardless of any special promise, they might well be held for the meats and groceries necessary to operate the machine. And the evidence does fairly show that the defendants specially promised and agreed to pay the expense, and on the faith of that agreement Miller & Posey parted with their meats and groceries. The fact that the defendants sold the machine to Bowman and took back a mortgage for the purchase money, agreeing with him to operate the machine for their mutual benefit, does not relieve the defendants of responsibility. He who takes the benefit must bear the burden. The law respects form less than substance. There was not a fair trial. The judgment is reversed and a new trial granted.