STATE OF NORTH DAKOTA, Respondent, v. HARRY FRANCIS KERNS, Appellant.

(198 N. W. 698.)

**Criminal law — confession not admissible unless voluntary.**

1. In a criminal cause a confession made by the defendant is inadmissible unless voluntary.

Note.—(1) When confession is voluntary, see notes in 53 L.R.A. 402; 18 L.R.A. (N. S.) 772; 50 L.R.A.(N.S.) 1077; 1 R. C. L. 552; 1 R. C. L. Supp. 197; 4 R. C. L. Supp. 41; 5 R. C. L. Supp. 31.

(5) Instructions construed as whole, see 14 R. C. L. 817; 3 R. C. L. Supp. 298; 4 R. C. L. Supp. 922; 5 R. C. L. Supp. 781.

(8) Right to cross-examine witness as to matters affecting his credibility, see 28 R. C. L. 609.

(9) Discretion of trial court as to order of proof not reviewable unless abuse shewn, see 2 R. C. L. 215; 1 R. C. L. Supp. 451.

**Criminal law — character of confession question for court, and its decision not disturbed unless weight of evidence.**

2. Where the admissibility of a confession is challenged, the question as to whether such confession was voluntary or involuntary is one to be determined by the court; and where the evidence is conflicting, such determination by the court will not be disturbed on appeal unless manifestly against the weight of the evidence.

**Criminal law — advice or admonition to speak truth, which does not import threat or promise, does not render confession involuntary.**

3. Mere advice or admonition to speak the truth which does not import either a threat or a promise will not render a following confession involuntary.

**Criminal law — instruction as to effect of defendant's mental condition on confession held not erroneous as to defendant.**

4. Certain instructions complained of examined, and *held*, for reasons stated in the opinion, not erroneous.

**Criminal law — error in instruction cured if whole charge correctly states law.**

5. Though an instruction standing alone may be insufficient or erroneous, it must be considered in connection with the remainder of the charge; and if the whole charge taken together correctly advises the jury as to the law, the error, if any, is thereby cured.

**Criminal law — question whether threats or promises were made to defendant before he made confession held not objectionable as calling for conclusion.**

6. In laying a foundation for the admission of a confession, a question whether any threats or promises were made to the defendant before he made the confession sought to be proved, was not under the circumstances and for reasons stated in the opinion objectionable as calling for a conclusion.

**Criminal law — remark of court during examination of witness held not prejudicial to defendant.**

7. During the course of the trial, the court made certain remarks which are complained of on this appeal. The record examined, and *held*, for reasons stated in the opinion, that the remarks were not prejudicial.

**Criminal law — witnesses — extent of cross-examination of witness as to collateral matters for impeachment purposes discretionary with court.**

8. For impeachment purposes, a witness may be cross-examined as to collateral matters, and the extent and latitude of such examination is within the

(10) Erroneous exclusion of evidence cured by subsequent admission, see 2 R. C. L. 254; 1 R. C. L. Supp. 477; 4 R. C. L. Supp. 98; 5 R. C. L. Supp. 88.

(11) Order granting new trial not reviewable, see 2 R. C. L. 217; 1 R. C. L. Supp. 453; 5 R. C. L. Supp. 83.

sound discretion of the trial court. *Held* in the instant case, for reasons stated in the opinion, that there was not such an abuse of such discretion as will warrant reversal.

**Criminal law — witnesses — conduct of trial and examination of witnesses discretionary with court, and its rulings not disturbed in absence of abuse of discretion.**

9. The conduct of the trial, the propriety of the examination of witnesses and the order in which the evidence is offered, are matters which must be left largely to the sound discretion of the trial judge, and his rulings will not be disturbed in the absence of a showing of abuse of discretion on his part.

**Criminal law — exclusion of evidence harmless where same evidence is subsequently received.**

10. Prejudicial error may not be predicated on account of the action of the trial court in rejecting or striking out evidence where subsequently the same evidence is received.

**Criminal law — motion for new trial addressed to discretion of court, and denial on ground of newly discovered cumulative evidence not abuse of discretion.**

11. The granting or denying of a motion for a new trial on the ground of newly discovered evidence is a matter largely within the sound discretion of the trial court. His judgment in that respect is conclusive on this court unless it can be said that he abused his discretion. *Held* in the instant case that no abuse of discretion is shown.

Opinion filed April 18, 1924.

Criminal Law, 16 C. J. § 1468 p. 717 n. 39; § 1476 p. 721 n. 83, 84, 85; § 1513 p. 735 n. 34, 40 New; § 1532 p. 749 n. 61; § 2049 p. 806 n. 9; § 2100 p. 831 n. 66; § 2179 p. 864 n. 80; § 2287 p. 926 n. 67; § 2421 p. 1003 n. 32, p. 1004 n. 34; § 2422 p. 1004 n. 35; § 2493 p. 1049 n. 82, p. 1050 n. 84; § 2708 p. 1182 n. 88; § 2727 p. 1199 n. 56; 17 C. J. § 3332 p. 62 n. 93; § 3579 p. 236 n. 95; § 3582 p. 242 n. 51; § 3583 p. 243 n. 58; § 3584 p. 244 n. 68, p. 246 n. 73; § 3589 p. 252 n. 17; § 3637 p. 296 n. 74; § 3678 p. 333 n. 90; § 3682 p. 337 n. 27; § 3729 p. 350 n. 64. Witnesses, 40 Cyc. p. 2409 n. 67; p. 2410 n. 76.

Appeal from the District Court of Williams County, *Lowe,* J.
Affirmed.

*Frank E. Fisk* and *Thos. F. Craven,* for appellant.

Officers have no right to subject a person to an inquisitorial examination and grill him by methods known as the sweat box. State v. Thomas (Iowa) 188 N. W. 689; People v. Thompson, 84 Cal. 598,

50 N. D.—59

24 Pac. 384; People v. Barrick, 49 Cal. 342; People v. Loper, 159 Cal. 6, 112 Pac. 720, Ann. Cas. 1912B, 1193.

It is error to admit a confession made, while the defendant is under arrest, under the inducement that "the best he could do was to own up" and "it would be better for him." People v. Philips, 42 N. Y. 200.

By "voluntary" is meant proceeding from the spontaneous suggestion of the parties' *own mind,* free from the influence of any extraneous disturbing cause.

The word "voluntary" as applied to confessions in criminal actions means more than that they were not given under compulsion. People v. McMahon, 15 N. Y. 384.

A remark, "Don't run your soul into more sin, but tell the truth" held to render confession inadmissible. Rig v. Steeman, 6 Cox, C. C. 245.

"Nonexpert opinion as to the existence or exercise of influence by one person over another have, in every case in which they have been offered, been held incompetent." L.R.A.1918A, 662, note, subd. IX. "It is a general rule in criminal cases which is well established, that the commission of other similar offenses by the defendant cannot be offered in evidence for the purpose of showing that the person charged has a criminal tendency or is of criminal disposition or nature, in order to thus show that there was more likelihood of his having committed the offense with which he is charged. There seems to be an exception to this rule as applied to sexual crimes." State v. Rice, 39 N. D. 605.

On newly discovered evidence, see State v. McKean (S. D.) 190 N. W. 781.

Geo. F. Schafer, Attorney General, John Thorpe, Assistant Attorney General, and F. W. McGuiness, for respondent.

"Littledale, J. well observed that telling a man to be sure to tell the truth, is not advising him to confess anything of which he is really not guilty." Sparf v. United States, 156 U. S. 51, 39 L. ed. 343.

"But mere advice to tell the truth, where there is neither a threat nor an inducement, is not sufficient to render the confession inadmissible." Heldt v. State, 20 Neb. 496, 30 N. W. 626; Kelly v. State, 72 Ala. 244; State v. Meekins, 41 La. Ann. 543, 6 So. 822; State v. Patterson, 73 Mo. 695.

"The third and last threat relied upon by the defendants as we have seen was that of the officer who was taking him over to the district attorney's office, who merely told him to tell the truth. This was advice merely, not a threat, and could not well be considered as bringing the case within the statute to which we have called attention. Com. v. Preece, 140 Mass. 276, 5 N. E. 494." People v. Randazzio, 87 N. E. 112, 194 N. Y. 147.

That a promise or inducement cannot be implied from an exhortation that it is best or better to tell the truth has been decided in numerous cases, among them the following: Washington v. State, 106 Ala. 58, 17 So. 546; State v. Kornstett, 62 Kan. 221, 61 Pac. 805; State v. Staley, 14 Minn. 105, Gil. 75; State v. Anderson, 96 Mo. 241, 9 S. W. 636.

The supreme court of the state of Alabama held that although the accused is urged to tell the truth, and the statement is made to him that it will be better for him to do so, does not render the confession involuntary. Hoffman v. State, 130 Ala. 89, 30 So. 394.

"The supreme court of the state of Ohio has held that the bare exhortation by the police captain to the accused that he had better tell the truth would not render a confession involuntary, *since this was not an influence calculated to bring forth an untruth.*" (Italics ours.) State v. Leuth, 5 Ohio C. C. 94.

We would also refer the court to the following decisions on this point: Steele v. State, 83 Ala. 20, 3 So. 547; People v. Kennedy, 159 N. Y. 346, 54 N. E. 51.

"Furthermore, for the purpose of this appeal it must be held that the court found with the state on the conflicting testimony, and it not being clearly against the weight of the testimony, such finding is binding upon us." State v. Allison (S. D.) 124 N. W. 747.

"But the rule is well settled that this court will in no case reverse the decision of a lower court on a question of fact unless it is manifestly against the weight of the evidence. (The same rule obtains in respect to the finding of facts by a court that does to the verdict of a jury; it must be clearly erroneous before it is set aside. . . .. Where his statements and those made by Page are at variance, it was for the court below to say which of them was entitled to credence, and its determination of the question on a conflict of evidence, unless mani-

festly against the weight of the evidence is final." State v. Staley, 14 Minn. 105, Gil. 75.

"Unless there is a positive promise of favor made or sanctioned by a person in authority, or the inducement held out is calculated to make the confession *an untrue one,* I think it may be laid down as a rule based on reason, and deductible from the late authorities that the confession will be admissible." (Italics ours.) State v. Staley, 14 Minn. 105, Gil. 75.

"So it has often been said the real question in every case is whether or not the confessing mind was influenced in a way to create doubt of the truth of the confession." State v. Vey, 114 N. W. 719.

"In cases of this kind, the real question is whether there has been any threat or promise of such a nature that the prisoner would be likely to tell an untruth from fear of a threat or hope of profit from the promise." State v. Hopkirk, 84 Mo. 278; United States v. Stone, 8 Fed. 832; Beckhorn v. State, 100 Ala. 15, 14 So. 859.

"In determining whether a confession is admissible, the only proper question is whether the inducement held out to the prisoner was calculated to make his confession an untrue one." People v. Smith, 3 How. Pr. 226.

"A promise of benefit to render a confession involuntary must be of such a character as to be likely to induce the accused to speak untruthfully." Rice v. State, 22 Tex. App. 654, 3 S. W. 791.

Several courts have laid down the general rule that the chief inquiry is whether the inducement was calculated to make the testimony untrue, of which we cite the following: Katie v. State, 44 Miss. 332; State v. Johnny (Nev.) 87 Pac. 3; State v. DeHart (Mont.) 99 Pac. 438; O'Brien v. People, 47 Barb. 274.

"Inasmuch as the theory upon which involuntary confessions are excluded is their possible falsity, if the confession discloses incriminating facts which are shown to be true, the reason of the rule ceases to exist, and so much of the confession as discloses the fact and the fact disclosed is competent." 8 Cal. Jur. § 201.

NUESSLE, J. The defendant, Harry Francis Kerns, was convicted in the district court of Williams county upon a charge (under §§ 10,035 and 10,036, Comp. Laws, 1913) of maliciously removing a bolt

from a switch on a railroad in Williams county with intent to wreck a train, thereby causing a wreck resulting in the death of two human beings. Thereafter he moved for a new trial, which motion was denied. From the judgment of conviction and from the order denying the motion for a new trial, the defendant now appeals to this court.

As grounds for reversal, appellant urges the insufficiency of the evidence to support the verdict, and assigns error on account of the rulings of the trial court as to the admission or rejection of evidence, on account of other errors of law occurring during the trial, on account of instructions given and excepted to, and on account of the denial of his motion for a new trial based on these various assignments and on a showing of newly discovered evidence. In all, appellant specifies some sixty-eight assignments of error.

Shortly, the facts as they appear from the record are as follows: On October, 19th, 1922, the defendant was making hay with his father on a quarter section of land adjoining Todd Siding on the Great Northern Railroad in Williams county. He and his father were living on the land in question at that time. The defendant was then nineteen years of age, had finished the eighth grade, but was somewhat subnormal mentally. On the evening of that day at about half past eight o'clock a Great Northern freight train traveling east was wrecked at Todd. The engineer and the head brakeman riding in the cab of the engine were killed. Examination subsequent to the wreck disclosed that the switch bolt in the rod connecting the rails with the standard of the west switch had been removed and was missing, thus leaving the rails loose. The train consisted of forty-six loaded cars and was drawn by a heavy engine. The engine and thirteen cars were derailed, the engine lying on its right side between two and four hundred feet east of the switch. At the time of the wreck the train was running around thirty miles an hour. The missing switch bolt was a heavy iron bolt with a nut and a cotter key. From the testimony of the section foreman, it appears that the bolt was in place, the nut screwed on, and the cotter key inserted and spread at 3:30 on the afternoon of the wreck. A few days after, the defendant, who was working about the wreck, was taken to Williston, the county seat, by the sheriff of Williams county and some railroad detectives for the purpose of being examined as to his knowledge of the occurrence. He was taken to the jail on Thurs-

day, but not at once formally put under arrest. Within a day or two he was arrested on a petit larceny charge for the stealing of certain railroad property, pleaded guilty, and confined on account of such charge in the county jail. While in the county jail, and after considerable questioning by the railroad detectives and various of the county officers, both before and after his arrest on the larceny charge, he made and signed a statement to the effect that he removed the bolt from the switch for the purpose of causing a wreck, gave his reasons therefor, and the manner in which he committed the act. This statement was signed on Saturday night. In the statement he told what he had done with the bolt which was removed, and before the statement was written out and signed he went with the officers, showed them the place where he had hidden the wrench with which he had removed the bolt, and also indicated the place in the brush where he had thrown the bolt. After a considerable search by the officers and the defendant, a bolt identical with the missing switch bolt was found at the place indicated by him. The defendant was thereupon arrested and charged with the offense of which he was herein convicted. On arraignment he entered a plea of not guilty, and on the trial repudiated the confession, declared that the same had been compelled and induced by threats and promises, and denied that the same was true. On the trial it was the defendant's contention that the right wheel on the pony truck of the engine was worn and defective; that as a result of such defect, the wheel "climbed" the rail, resulting in the derailment and wreck.

The appellant contends that the evidence is insufficient to justify the verdict, first, because it appears from the evidence that he was not at the switch at any time after the same was inspected by the section foreman and prior to the wreck; second, that the alleged confession was involuntary, and therefore, inadmissible, and that without such confession it is not and cannot be established that the switch bolt was removed by him; third, that even though it be established that the switch bolt was removed by him that the circumstances of the wreck are such that it must be held to appear therefrom that the derailment was caused by reason of the defective wheel on the pony truck.

From the record it is clear that the statement, purporting to be the confession of the defendant and which was offered and received in evidence over the objection of the defendant, was in fact made and

signed by him. We have heretofore set out in general the circumstances under which it was so made and signed and its general purport. The defendant objected to its introduction on the ground that it was involuntary, and therefore, inadmissible. The court thereupon excused the jury and tried the issue as made by this objection. The examination of witnesses in this behalf was very thorough and very lengthy. The state produced numerous witnesses who testified as to the circumstances attendant on the making and signing of the confession, and the defendant himself took the stand together with other witnesses in an endeavor to sustain the objection. At the conclusion of the trial of the issue as thus made, the court ruled: "The court is of the opinion that the evidence relating to the confession as heard by the court in the absence of the jury establishes beyond a reasonable doubt that the alleged confession was voluntarily given, and that there is no reason for excluding it from the jury." Thereupon the jury were recalled and the trial of the main issue proceeded with. All of the witnesses who had testified before the court in the absence of the jury relative to the issue there being tried were recalled and testified before the jury touching the matter substantially to the same effect as before, and the confession was received in evidence notwithstanding the objection of the defendant.

A confession is inadmissible unless voluntary. This rule is so well established that it is unnecessary to cite authorities in support thereof. But see 16 C. J. p. 717 and cases cited at note 39. In this case the question of the character of the confession as to whether voluntary or involuntary was passed upon and determined by the trial court. The evidence was conflicting. The question thus became a mixed question of law and fact. We think that it was to be determined by the trial court as any other matter touching the admissibility of evidence. Huffman v. State, 130 Ala. 89, 30 So. 394; People v. Loper, 159 Cal. 6, 112 Pac. 720, Ann. Cas. 1912B, 1193; Hauk v. State, 148 Ind. 238, 46 N. E. 127, 47 N. E. 465; State v. Grover, 96 Me. 363, 52 Atl. 757, 12 Am. Crim. Rep. 128; State v. Holden, 42 Minn. 350, 44 N. W. 123; State v. Staley, 14 Minn. 105, Gil. 75; State v. Berberick, 38 Mont. 423, 100 Pac. 209, 16 Ann. Cas. 1077 (under statute); State v. Monich, 74 N. J. L. 522, 64 Atl. 1016; State v. Gorham, 67 Vt. 365, 31 Atl. 845, 10 Am. Crim. Rep. 25; Lang v. State, 178 Wis. 114,

24 A.L.R. 690, 189 N. W. 558; Greenl. Ev. § 219B; Underhill, Crim. Ev. § 126; Whart. Crim. Ev. § 674A. Many courts, however, have held to the contrary. Some have laid down the rule that where there is a conflict of evidence touching the matter, the issue must be submitted to the jury. See State v. Bennett, 143 Iowa, 214, 121 N. W. 1021; State v. Storms, 113 Iowa, 392, 86 Am. St. Rep. 380, 85 N. W. 610; People v. Randazzio, 194 N. Y. 147, 87 N. E. 112; People v. Cassidy, 133 N. Y. 612, 30 N. E. 1003; State v. Doris, 51 Or. 148, 16 L.R.A.(N.S.) 660, 94 Pac. 47; State v. Montgomery, 26 S. D. 539, 128 N. W. 718; State v. Allison, 24 S. D. 622, 124 N. W. 747; State v. Wells, 35 Utah, 400, 136 Am. St. Rep. 1059, 100 Pac. 681, 19 Ann. Cas. 631; United States v. Oppenheim (D. C.) 228 Fed. 220; 16 C. J. p. 735. Other courts have held that the issue is to be determined by the court, but that the question may be submitted to the jury as a matter of grace to the defendant. Com. v. Preece, 140 Mass. 276, 5 N. E. 494, 5 Am. Crim. Rep. 107; Wilson v. United States, 162 U. S. 613, 40 L. ed. 1091, 16 Sup. Ct. Rep. 895. And generally, see notes in 18 L.R.A.(N.S.) 768 and 50 L.R.A.(N.S.) 1077. And where the question is to be determined by the court and the evidence is conflicting, the determination by the trial court will not be disturbed on appeal, unless manifestly against the weight of the evidence. State v. Gorham, 67 Vt. 365, 31 Atl. 845, 10 Am. Crim. Rep. 25; State v. Grover, 96 Me. 363, 52 Atl. 757, 12 Am. Crim. Rep. 128; State v. Berberick, 38 Mont. 423, 100 Pac. 209, 16 Ann. Cas. 1077; State v. Monich, 74 N. J. L. 522, 64 Atl. 1016; People v. Loper, 159 Cal. 6, 112 Pac. 720, Ann. Cas. 1912B, 1193; Lang v. State, 178 Wis. 114, 24 A.L.R. 690, 189 N. W. 558; State v. Holden, 42 Minn. 350, 44 N. W. 123; State v. Storms, 113 Iowa, 392, 86 Am. St. Rep. 380, 85 N. W. 610; State v. Allison, 24 S. D. 622, 124 N. W. 747. We think this rule reasonable and proper and consistent with the holding of this court as to the consideration given on appeal to a finding of fact of a trial court. See State Bank v. Maier, 34 N. D. 259, 158 N. W. 346; State v. Southall, ante, 723, 197 N. W. 866.

It is the contention of the appellant that, as a matter of law in this instance, the confession must be held involuntary. As we have heretofore stated, there was a conflict in the testimony. The defendant, as against the admissibility of the confession, adduced evidence tending

to show that he was held in the county jail from Thursday to Saturday, part of the time without charge; that he was subjected to examination after examination; that he was not permitted to see his father or to employ counsel; that he was threatened with violence by a fellow prisoner, who was in fact an agent and tool of the officers, unless he should confess; that he was told that the state had proof of his guilt, and in any event he would be convicted, and unless he confessed he would be given a sentence of fifty years on such conviction; that if he confessed, the officers would be lenient with him; that if he confessed he would be sent to the reform school and not sentenced to confinement in the penitentiary; that it would be better for him to confess and to tell the truth. On the other hand, the state's witnesses denied these charges and maintained that no threats or promises were made. Considering the testimony in the light most favorable to the state's contention, as we must do in view of the finding of the court, what was said was that the officer was the friend of the defendant, and that it would be better to tell the truth, and that it would be best for the defendant to tell the truth. The defendant was at the time nineteen years of age. It appears that he had finished the eighth grade. There is testimony to the effect that he was mentally subnormal, a moron having the mentality of a child of seven or eight years of age, and on the contrary, there is also testimony that he was very shrewd.

It is manifestly impossible to establish any accurate and absolute standard by which the character of a confession may be measured and tested. It seems to us that in every case the particular circumstances must control. Depending upon the circumstances, words and actions that in one case might render a confession involuntary might not in another; an inducement or compulsion that might inspire hope or result in fear in one case might have absolutely no effect in another. All the circumstances, the age, disposition, mentality, education, experience of the defendant, and the treatment he was subjected to, must be taken into consideration. For all of these reasons it is impossible to lay down any accurate and definite measure as to the words or acts that will render a confession involuntary. Precedents of almost every sort may be found, depending in the main upon the court and the exigencies of the particular case, and not upon the logical application of any definite rule. Professor Wigmore argues with much force that the rule should

be to receive all well-proved confessions in evidence, and to leave them to the jury, subject to all discrediting circumstances, to receive such weight as may seem proper. Wigmore, Ev. 2d ed. §§ 865–867. The appellant cites and relies upon the case of Bram v. United States, 168 U. S. 555, 42 L. ed. 578, 18 Sup. Ct. Rep. 183, 10 Am. Crim. Rep. 547. It must be conceded that that case is an authority strongly in his favor. But it is to be noted that three of the court dissent from the conclusion arrived at by Mr. Justice White. See also Wigmore, Ev. 2d ed. vol. 2, p. 225, note 12 and Greenl. Ev. 16th ed. § 219a, note 10. The test is, was the confession induced by hope of some advantage or compelled by fear of some consequence? Mere advice or admonition to the defendant to speak the truth, which does not import either a threat or a promise, will not render a following confession involuntary. The court made its finding that the confession was voluntary. We think it sufficient to say that we cannot hold as a matter of law that the confession was involuntary. See State v. Storms, 113 Iowa, 392, 86 Am. St. Rep. 380, 85 N. W. 610; People v. Randazzio, 194 N. Y. 147, 87 N. E. 112; Huffman v. State, 130 Ala. 89, 30 So. 394; State v. Staley, 14 Minn. 105, Gil. 75; State v. Allison, 24 S. D. 622, 124 N. W. 747; State v. Kornstett, 62 Kan. 221, 61 Pac. 805; State v. Williams, Ann. Cas. 1913B, 302 and note (129 La. 215, 55 So. 769); Wigmore, Ev. 2d ed. § 832; 16 C. J. p. 721, notes 83–85.

The defendant excepted to certain portions of the court's instructions to the jury dealing with the matter of the confession. It may be well at this time to consider those portions of the instructions thus excepted to. The court in that regard charged the jury as follows:

["Some testimony has been offered tending to show the mental caliber or condition of the defendant. This testimony may be considered by you as bearing on the intent with which the defendant acted, should you find the defendant did the things charged against him. It may also be considered by the jury in determining whether the alleged confession was voluntary or involuntary, and whether true or untrue. Should the jury fail to find the defendant had sufficient mental understanding to form an intent to do a wrongful act deliberately on October 19th, 1922, you should find the defendant not guilty. Should the jury find the alleged confession was involuntary by reason of the mental condition of the defendant, you should disregard such confession.]

"Some testimony has been offered in this case bearing upon the question of a confession by the court, and also some testimony has been offered tending to show the circumstances surrounding the giving of such alleged confession. The jury may and should consider all this testimony as bearing upon whether there was a confession and whether the confession, if made, should be considered by the jury.

["No confession or admission of defendant is admissible in evidence unless made freely and voluntarily and not under the influence of promises or threats. A confession forced from the mind by the flattery of hope or the torture of fear comes in so questionable a shape when it is to be considered as evidence of guilt that no credit ought to be given it, and therefore, is rejected.

"The fact that a confession was procured by the employment of falsehood by an officer, detective or other person does not alone exclude it. Nor does the employment of any artifice, deception or fraud exclude it if the artifice or fraud employed was not calculated to procure an untrue statement. Should the jury fail to find that the alleged confession was given by the defendant freely and voluntarily, that is, without a promise or threat by others sufficient to produce such a fear in his mind or hope of reward as would be fairly likely to make the defendant make a false and untrue confession, then you should wholly disregard such confession. However, should the jury believe there were no promises or threats made to the defendant which were fairly likely to produce an untrue confession, then you should consider the confession with all the other testimony in the case upon the question of guilt or innocence of the defendant."]

Exception is taken by the defendant to those portions of the charge above quoted which are included within brackets. To the first paragraph, for the reason, as he contends, that the jury were in effect told thereby that if the defendant had sufficient mental understanding to form an intent they should consider the confession. We think the defendant has no good reason to complain on account of the first portion of the instruction here excepted to. The question of admissibility was for the court. The jury had the right to pass upon the mental condition of the defendant, and the manner and circumstances in which and under which the confession was made in order to say what weight and credibility they should give to it. They were told that if it was in-

voluntary by reason of the mental condition of the defendant, they should disregard the confession. The instruction was at least as favorable as the defendant was entitled to ask. Surely he could suffer no prejudice on account of it.

Let us now consider the second portion of the instruction above quoted and to which the defendant has taken exception. The defendant complains because the test as laid down by the court for the guidance of the jury in considering or rejecting the confession was as to whether or not such confession was true, and that if the same were true it was admissible and to be considered, even though induced by threats or promises. Here also we think there was no error as against the defendant. The defendant's contention is based upon the premise that it was the proper function of the jury to pass upon the question of admissibility. Not so. As we have heretofore held, it was the province of the court to pass upon the question of admissibility of the confession, that is, whether or not it was voluntary; and having done so, if it were found to be voluntary, to submit the confession to the jury together with all the circumstances attendant upon its making. So that the jury, though having no power to revise the finding of the court as to the voluntary character of the confession, did have the sole right to say whether it was true or untrue and what weight and effect should be given to it. That is, the question of admissibility is always and ever for the determination of the court as is every other question of the admissibility of evidence, while the question of the weight and credibility of the confession is always and ever for the determination of the jury. In the light of this rule, we think that there was no error in the instruction complained of. The court was concerned with the question of whether the confession was voluntary or not only as touching the matter of admissibility; the jury was concerned with the question of whether the confession was voluntary or not only as affecting its weight and credibility. Having been admitted, it was to be considered *if true,* even though the jury may have believed it to be involuntary. If it were untrue, then even though it were voluntary, it should not be considered by them. If error there was, it was error in favor of rather than against the defendant, to the extent that the instruction left it for the jury to say whether it was admissible.

Since the confession was thus admissible and received in evidence,

we think that there can be no question but that the evidence was suffi-cient to sustain the verdict.    Certainly there can be no question but that it was sufficient to sustain the charge as defined by § 10,035, Comp. Laws 1913.    The defendant contends that even though the switch bolt was maliciously removed by the defendant as charged that it does not affirmatively appear from the evidence that the wreck of the train and the resulting death of the two trainmen was caused thereby; that the wreck might have been caused by the defective wheel on the pony truck. It appears that the track at the place of the wreck was straight; that even with a wheel defective, as the defendant claims the one in ques-tion was, it would not "climb" the rail unless there were some curve or imperfection in the track or rail.    The evidence is conflicting as to whether the wheel was defective; and while it may be urged that the circumstances of the wreck as disclosed, the marks of the wheels on the ties and rails, and the position of the wrecked engine and cars might to some extent tend to sustain the contention that the wreck was caused by a defective wheel, nevertheless, other than the loose rails of the switch there is no evidence tending to show such a defect in the track or rails as would cause the wreck, if the wheel were not defective.

The appellant, under his second point, urges error on account of the instructions of the court.    We have heretofore considered certain of the instructions excepted to.    There remains but one other.    The ap-pellant contends that the court erred in instructing the jury as to the material allegations of the information as follows:

"The material allegations of the information in this case are that the defendant did on the 19th day of October, 1922 or at some day within two years next preceding the commencement of this term of court wil-fully, wrongfully, unlawfully and feloniously remove and displace a bolt in the switch at the side track located at Todd, Williams County; North Dakota, with a malicious intent to derail a train, which said derailment of said train resulted in the death of a human being," that said instruction is erroneous for the reason that it does not advise the jury that they must find beyond a reasonable doubt that the malicious interference with the switch was the proximate cause of the derailment and of the deaths before they could find the defendant guilty of the aggravated offense charged in the information.    Standing alone, we think this instruction may be subject to challenge in this respect, but it

must be considered in connection with the remainder of the charge. The court in a subsequent portion of the charge advised the jury as follows:

"'Three forms of verdict will be submitted, one a form for finding the defendant guilty of malicious injury to a railroad resulting in the death of two human beings as charged in the information; another form will be for finding the defendant guilty of malicious injury to a railroad, and the third form will be for finding the defendant not guilty.

"Should the jury find the defendant guilty as charged in the information, and find that as a result of such malicious injury to a railroad the death of two human beings occurred, then you would use the form so indicated. ·

"Should the jury find the defendant guilty of malicious injury to a railroad and have a reasonable doubt as to whether the death of a human being resulted from such malicious injury, then you would sign and return the second form of verdict above indicated.

"Should the jury have a reasonable doubt as to the guilt of the defendant, you would sign the last form referred to of not guilty."

And again:

"If you should find the defendant did the act or acts charged in the information and find that it was the result of his acts these deaths resulted, then of course, he would be guilty of that offense. If you find that he did the acts charged in the information and you fail to find that the deaths of the persons referred to in the testimony were the results of the acts of the defendant, then you should just leave that off from your verdict."

We think, considering the charge as a whole, and it must be so considered, that the jury were advised that they must not only find that the defendant injured the switch as charged, but that as a consequence of such injury, the wreck occurred and the deaths resulted. The error, if any, in that portion of the charge complained of was thereby cured. See State v. Carter, ante, 270, 195 N. W. 567; State v. Finlayson, 22 N. D. 233, 133 N. W. 298.

The remaining assignments have to do with matters that were largely within the discretion of the trial court. Under his third point, the appellant has grouped various assignments based on rulings on evi-

dence. He contends that the state's witnesses were permitted to testify as to opinions and conclusions regarding threats, promises, etc. We have examined these assignments, and we are of the opinion that there was no prejudicial error. While the witnesses were being examined touching the circumstances as to the making by the defendant of his confession, various of them were asked, after detailing what had been said and done, as to whether or not any threats or promises were made. Such questions were objected to by the defendant on the ground that they called for the conclusions of the witnesses. In one sense conclusions were called for, in another they were not. The testimony called for was of a negative character. The state was attempting to lay a foundation for the introduction of the confession. That foundation could only be laid by showing that threats or promises were not made. In every instance the defendant was permitted to cross-examine fully after such questions were asked and answered. See Crain v. State, 166 Ala. 1, 52 So. 31; People v. Jackson, 138 Cal. 462, 71 Pac. 566.

The defendant also assigns error on account of the fact that the court expressed his opinion on a question that could be determined only by the jury. The particular matter complained of arose as follows: During the examination of the defendant he was asked,

Why did you make the confession that has been offered in evidence and tell those special agents what you did?

A. Because I was scared and afraid that they would say I had done it and make the people and the public believe I had done it, and that they had an eye-witness to the effect that they were going to prove that I had done it.

Whereupon the court said,

"Is that all? That does not answer the question."

We think that this remark by the court might or might not have been subject to exception on the part of the defendant, depending upon the circumstances under which and the manner in which it was made. It must be remembered that the testimony then being offered in the presence of the jury had prior thereto been offered before the court in the absence of the jury. Necessarily, the court must have known and remembered the general purport of the testimony, if not the particular

testimony, of the various witnesses, and the remark in question was doubtless made in view of that fact to elicit further testimony, and not as a comment or expression as to the weight or value of that which had been given. No objection was made on the part of the defendant at the time. If there was any ground for complaint, it was not called to the attention of court or counsel at a time when any prejudice resulting therefrom might have been remedied. The remark must have been considered inoffensive and unobjectionable when made. For aught that appears now, it was innocent and harmless. It is true that the statute, § 7653, Comp. Laws 1913, provides that all remarks of the court made during the trial are deemed excepted to, and therefore, it was not necessary in order to save an exception that any affirmative action be taken by the defendant. But the statutory exception applies to all remarks, prejudicial and nonprejudicial alike. The matter was assigned as one of the grounds for a new trial on motion therefor. The trial court denied the motion. On the record as made, in view of the ruling of the trial court on motion for new trial, we are not prepared to say that the matter complained of was prejudicial.

The defendant predicates error on account of various rulings of the court when in the course of the defendant's case the defendant himself and his chief witness, his father, were on the stand and under cross-examination. These specifications are grouped by the defendant under the fifth heading in his brief. They include Assignments 21 to 44, inclusive, and 49. When the witnesses in question were being cross-examined, the state inquired of them as to the taking and disposition of various articles of personal property alleged to have belonged to the railroad company and to have been taken by the defendant or his father, and as to other collateral matters. These matters were clearly collateral to the issue being tried. The defendant complains on account of this examination, contending that such examination was unduly protracted and unfair and that it was highly prejudicial. The justification for the examination, at least so far as the father was concerned, was that it was for impeachment purposes as tending to show his interest and motive, and to criminate, disgrace or degrade him. There is no question but that for impeachment purposes a witness may be cross-examined as to collateral matters. See State v. Keillor, ante, 728, 197 N. W. 859, and cases cited. The extent and latitude of such examina-

tion is within the sound discretion of the trial court. Ruddick v. Buchanan, 37 N. D. 132, 163 N. W. 720; Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003. It appears in the instant case that certain articles of personal property belonging to the railroad company had been stolen; that prior to the wreck the defendant and the witness were in the possession of these and of other articles of personal property belonging to the railroad company; that all of such articles, both those that were stolen and the others, had been concealed by the defendant and his father immediately after the wreck. The examination touched all of such matters and the motives and conduct of the witnesses with respect thereto. We think that the examination was unduly extended. But nevertheless we do not believe that there was such an abuse of discretion on the part of the trial court with reference to the same that prejudicial error can be predicated thereon.

Under his sixth point, the appellant has grouped assignments predicated on the rulings of the court in admitting in evidence certain exhibits, to-wit, certain maps and the bolt claimed by the state to be the bolt removed from the switch by the defendant. The purpose for which they were offered and received was clearly indicated at the time of their admission, and we think that a sufficient foundation was laid to warrant the action of the court in admitting them. Their weight and value as evidence were for the consideration of the jury, and there was no error in their reception.

Appellant's next point deals with assignments aimed at the action of the court in overruling objections interposed on the grounds that questions were leading, called for the conclusion of the witness, or were improper redirect examination. We have examined the various assignments, and we are of the opinion that none of the rulings were such that we can say that there was an abuse of discretion on the part of the court. The conduct of the trial, the propriety of the examination of witnesses, and the order in which the evidence is offered, are matters which must be left largely to the sound discretion of the trial judge. Holbert v. Weber, 36 N. D. 106, 161 N. W. 560; State v. Tracy, 34 N. D. 498, 158 N. W. 1069; Blackorby v. Ginther, 34 N. D. 249, 158 N. W. 354; Zilke v. Johnson, 22 N. D. 75, 132 N. W. 640, Ann. Cas. 1913E, 1005; State v. Goetz, 21 N. D. 569, 131 N. W. 514.

Under point eight the appellant has grouped Assignments 19, 45,

46, 52, 53, 55, 56, 50 and 51. These assignments are aimed at rulings of the court in rejecting or striking out certain evidence offered on the part of the defendant. Certain of the rulings complained of may have been erroneous in the first instance; but if there was any error, the same was corrected by reason of the succeeding examination, as a result of which the testimony rejected was admitted. For instance, where the defendant had been testifying as to what had been told to him by certain of the officers prior to the making of his confession, he was asked, "Q. They told you that your father had told them that you better tell that you had done it, or was there anything said about your father?'" which was objected to by the state as assuming testimony of the boy, and which objection was sustained. Subsequently, however, the witness was permitted to answer as fully as desired as to what was said to him by the officers during that particular conversation. Likewise, there was no error in the action of the court as pointed out in Assignments 50 and 51. Ruddick v. Buchanan, supra. And again, the defendant complains of error in his Assignment 45 on the following record:

Q. During all the time after you came to Williston until that afternoon, had any of these special agents made any promises of any kind that you remember?

A. Yes.

Q. What was it?

A. Mr. Reagan promised me that—

Mr. Burke: Objected to as calling for a conclusion of the witness. Let him tell what Mr. Reagan said.

The Court: Sustained.

We think that this ruling of the court was manifestly proper. The witness was permitted to answer the inquiry as to whether any promise had been made to him. His answer was "Yes." To the question, "What was it?" there was no objection to the witness stating what was said. The objection was to the conclusion of the witness as to the effect of what was said.

Assignments 52, 53, 55 and 56 are based upon the action of the court in sustaining objections interposed to questions put by the de-

fendant's counsel to certain expert witnesses called in his behalf. The theory of the defense during the trial was that in any event the wreck was not caused by the removal of the bolt from the switch connecting rod, but that one of the wheels of the pony truck was so worn as to be defective; that by reason of such defect, the wheel "climbed" the rail and caused the wreck. Thus the condition of the wheel in question was material and important to the defense. Accordingly, the defense called witnesses for the purpose of testifying to such condition. These witnesses were qualified by showing that they were experienced train-men whose business had been the examination and inspection of wheels and other railroad appliances. These witnesses testified to having examined the wheel in question immediately subsequent to the wreck. When the defendant inquired as to the height and thickness of certain parts of such wheel, it appeared that the witnesses had not in examining the wheel used the instruments ordinarily provided by the railroad authorities in making such examinations. The state thereupon objected to the questions on the ground that since the witnesses had not made accurate measurements they should not be permitted to testify. These objections were sustained. Standing alone, we think that these rulings were erroneous. The defendant had the right to offer the judgment of his expert witnesses based on their examination of the wheel as to the measurements in question. The fact that they had not used the instruments ordinarily provided for making such measurements or that their estimates might not be accurate was not a sufficient reason for excluding their testimony. The weight and value of such testimony was for the consideration of the jury, but the defendant had the right to have the jury pass upon the same. But subsequently and during the course of the examination of the witnesses in question, they were permitted to testify concerning the condition of the wheel, and the height and thickness of the various parts thereof. So that the defendant did ultimately succeed in getting their testimony to the jury. The defendant concedes this, but complains because of the rulings of the court, which he urges tended to have the effect of minimizing in the minds of the jury the value which they might accord such testimony. We do not think that this was the case, and therefore, must hold that there was no prejudicial error on account of the rulings in question. Ruddick v. Buchanan, 37 N. D. 132, 163 N. W. 720.

The defendant took the stand and testified in support of his contention that the confession which had been admitted in evidence was involuntary.    On cross-examination he was asked by the state if it were not true that he had never told anybody about his connection with the wreck until he had talked with his attorney.    Defendant now asserts that this was an unpardonable invasion of the defendant's rights; that any conversation that he may have had with his attorney was absolutely privileged, and that he could not properly be required to testify with reference thereto.    It is to be noted that the question did not call for a statement of any conversation with his attorney.    Its purpose was to fix the time at which any statements relative to his connection with the wreck were first made; that no statements were made until after he had seen his attorney.    A fair construction of this examination can lead to no other inference or conclusion.    Viewed in this light, there was no error on account of the examination.

Lastly, the defendant urges error on account of the denial of his motion for a new trial based among other things on a showing of newly discovered evidence.    The defendant, in support of his motion on that ground, submitted the affidavits of several of the passengers who were riding in the caboose of the train at the time of the wreck.    Such affidavits are to the effect that the makers thereof were present at and about the scene of the wreck from the time thereof until the evening of the next day; that they had opportunity to and did see and examine the position and condition of the track, ties, rails, wreckage, etc.; that they heard some of the railroad men, unknown to them and whose names are unknown, talking with reference to the bolt and nut which the defendant was charged with having removed, and that such men stated that they had found such bolt and nut, but they themselves did not see the same; that the makers of such affidavits live at distant places without the state of North Dakota, and that the defendant and his counsel did not know of them or of the knowledge that they possessed with reference to the facts in connection with the wreck until subsequent to the time of the trial, and could not have ascertained the same by the exercise of reasonable diligence; that if a new trial be granted to the defendant, that such witnesses will be procured and will testify in accordance with the statements as set out in such affidavits.    We think that the evidence which the defendant seeks to show

that he will be thus enabled to procure is in the main cumulative. There is little divergence in the testimony as to the condition of the ties, rails and wreckage, and the marks thereon; and it does not appear that such newly discovered evidence is substantially different from that already in the record. The statements alleged to have been made by the railroad men with reference to the nut and bolt are indefinite and vague. The witnesses did not see the nut and bolt, and the men who made the statements with reference thereto are not identified, nor is it claimed that they can be identified. Under all the circumstances, the matter as to the granting of a new trial was largely within the discretion of the trial judge. He denied the motion. His judgment is conclusive on this court, unless it can be said that in so doing he abused his discretion. Strong v. Nelson, 43 N. D. 326, 174 N. W. 869; State v. Cray, 31 N. D. 67 and authorities cited at p. 79, 153 N. W. 425. We are of the opinion that no such abuse is shown.

No prejudicial error appearing in the record, the judgment and order must be and are affirmed.

BRONSON, Ch. J., and BIRDZELL, CHRISTIANSON, and JOHNSON, JJ., concur.