STATE OF MINNESOTA *vs.* CLIFTON HOLDEN.

January 14, 1890.

Trial for Murder—Evidence—Confession.—It is for the court to decide, in a criminal trial, whether alleged confessions have been made under such circumstances as to be properly receivable in evidence against the defendant; and its decision is to be sustained, unless manifestly against the weight of the evidence. *State* v. *Staley*, 14 Minn. 75, (105,) followed.

Same—Inducements to Confession.—The inducements to the making of confessions, which should exclude proof of such confessions, must have come from one in authority, or must have been presented under circumstances likely to lead the defendant to suppose that they were sanctioned by a person in authority.

Same—Contradictory Statements of Accused.—Evidence considered as justifying the decision of the trial court receiving in evidence proof of inculpatory and contradictory statements made by the defendant.

Same—Testimony that Statements were Voluntary.—Testimony of witnesses, that certain statements of the defendant were voluntarily made, considered, in connection with other evidence, as not being the expression of an opinion, but the statement of the fact that no inducements were presented leading to the making of the statements.

Same—Evidence as to Identity of Deceased—Photographs.—A witness who had seen the dead body of the deceased gave testimony tending to show that he had seen the same man alive subsequent to the time when, according to the theory of the state, he had been killed by the defendant. He identified a photograph of a brother of the deceased as resembling the man he saw. *Held*, that there was no apparent error in receiving in evidence a true photograph of the deceased.

Same—Submission without Argument at Request of Jury.—At the close of the evidence, and before the court had charged the jury, six of the jurors sent a request to the counsel for the state and for the defendant that the cause be submitted to the jury without argument, and this was done. *Held* to be no ground for a new trial.

Same—Request Covered by Charge.—The general charge of the court *held* to be sufficient to cover a particular request for instruction as to the duty of the jury, if any fact inconsistent with the defendant's guilt had been established.

Evidence considered sufficient to justify the verdict.

Defendant was tried and convicted in the district court for Redwood county, before *Webber, J.*, on an indictment for murder in the first degree, and appeals from an order refusing a new trial.

*Chas. C. Willson*, for appellant.

*Moses E. Clapp*, Attorney General, *H. W. Childs*, and *M. M. Madigan*, for the State.

DICKINSON, J. The defendant was convicted of the crime of murder in the first degree. This is an appeal from an order refusing a new trial.

At about 7 o'clock in the evening of Friday, November 23, 1888, the defendant and the deceased, Frank Dodge, left the village of Morton, to drive in a buggy to the village of Redwood Falls, a distance of seven miles. At a later hour of the same evening the defendant came, with the team, to a hotel in Redwood Falls, where he remained that night. At an early hour the following morning the dead body of Dodge was found lying at the side of a street in Redwood Falls. He had been shot, the ball having entered the head on the back side, and passed through the brain. Saturday evening, the 24th of November, the defendant was arrested for the homicide, and imprisoned in a room used for the purposes of a jail. On that same day, prior to his arrest, the defendant made a statement under oath, at a coroner's inquest, stating, in substance, among other things, that as he and Dodge drove into the village of Redwood Falls, the evening before, Dodge, observing a man in the street, said, "There is the party I want to spot," and, getting out of the buggy, went with the man referred to; that, later in the evening, the defendant again saw Dodge in a street of the village, in company with a man whose appearance and dress he particularly described; that Dodge said to the defendant that he had some special business to transact with that gentleman, but would soon come to the hotel. The defendant then returned to the hotel, and went to bed for the night. He had previously, on the same day, made a similar statement, but, according to the evidence, not embracing exactly the same statement of facts. On the following Monday, November 26th, to which time the coroner's inquest was adjourned, the defendant again made a statement, which, having been reduced to writing, and signed

by him, was received in evidence, against the objection of the defendant. This account was wholly different from that previously given. The following summary of a part of it will be sufficient for an understanding of the questions to be decided: According to this account, the deceased, in conversation with the defendant, had shown that his mind was affected with despondency and suspicion concerning a young lady to whom he was engaged to be married. While riding to Redwood Falls the deceased conversed upon that subject. When they had come within a little more than a mile of the village, the deceased asked for the defendant's pistol, ostensibly to shoot a dog which had followed the team from Morton. Taking the pistol, Dodge then shot himself. The defendant drove on, with the dead body, into the village, and placed it at the side of the street, where, on the following morning, it was found. The particular circumstances upon which the defendant's objections to this statement being given in evidence were principally based will be now stated. On Sunday, the day before the making of this statement, one Warner, with the consent, and perhaps at the instance, of the sheriff and county attorney, visited the defendant several times in the place of his confinement, for the purpose of obtaining from him whatever facts he could relative to the homicide. According to Warner's testimony, he told the defendant that "the best way for him to do, if he had any connection with the matter, was to tell the truth about it." He said: "You have made two or three contradictory statements. You don't want to do that. You had better tell the truth about it." Warner also gave him a small drink of whiskey. After this, in the evening of that day, when the sheriff and county attorney were present, the defendant gave an account of the transaction, similar to that made on the following day, to which we have already referred.

In passing upon the legal question arising upon the objection to the receiving in evidence of the statement made on Monday, it is to be assumed that if any improper influence was exerted upon the defendant the preceding day, of such a nature as would have rendered inadmissible any statement then made by him, it would have also had the same effect as to the statement made on Monday, unless the circumstances were such as to show that the improper influence

had been dispelled. We also assume, in accordance with the contention of the defendant's counsel, without so deciding, that the admissibility of the statement in question, the suicide account, is governed by the rule which excludes proof of *confessions* of guilt, when made under the influence of inducements to confess exerted by persons in authority. Even applying that rule to this case, it is considered that the decision of the trial court admitting proof of the statement made by the defendant on Monday should be sustained. It is to be borne in mind that it is for the court alone to decide as to the admissibility of the proof of confessions, and that his decision should not be set aside, unless it is manifestly against the weight of the evidence bearing upon the point. *State* v. *Staley,* 14 Minn. 75, (105.)

It is well settled, as a general rule, to which there may be exceptions, as in the case of young persons of immature minds, that inducements of advantage or of harm presented to the mind of the accused, in order to have the effect to exclude proof of his confessions, must have come from a person in authority,—as that word has come to be understood in this connection,—or must have been presented under such circumstances as to be likely to lead the accused to suppose that they were made with the sanction of a person in authority. *State* v. *Staley, supra; Reg.* v. *Moore,* 2 Denison, Cr. Cas. 522; *Reg.* v. *Taylor,* 8 Car. & P. 733; Rosc. Crim. Ev. 46; Steph. Dig. Ev. pt. 1, c. 4, art. 22; Whart. Crim. Ev. § 651; and see extended note upon "Confessions," with numerous citations, in 3 Am. & Eng. Cyclop. Law, 456. The case here presented justified the conclusion of the trial judge that the statement in question was not made under such conditions. Warner was not an officer, nor in any sense a person in authority; not does he appear to have assumed to have any authority, or to have led the defendant to suppose that he had. He neither had, nor appears to have assumed to have, any connection with the arrest or confinement of the defendant, or with the prosecution of the case, beyond what we have before stated. On the contrary, the evidence justified the conclusion that the defendant regarded him only as a visitor interested in him, and in his kindred in another part of the state. The defend-

v.42м—23

ant was of adult age; and, while it is shown that he drank once of intoxicating liquor, it was shown, also, that he was not intoxicated. The language of Warner to which we have referred, does not appear to have been used in the presence of any of the officers. It may be added that on the occasion of the making of the statement by the defendant, on Monday, the county attorney advised the defendant, in effect, that he was not obliged to make any statement, and that he should not expect favor for doing so.

In respect to several other statements made by the defendant, to various persons, at different times, the state assumed, before offering in evidence proof of such statements, to show affirmatively that they were made voluntarily. It is assigned as error that in such preliminary examination the witnesses were allowed in several instances to testify directly that the statements were made by the defendant "voluntarily," or "of his own free will." We think that there was no prejudicial error in the rulings of the court. The point made by the defendant involves an error in assuming that in such testimony an *opinion* on the part of the witnesses was called for or expressed. It is apparent, as we think, from the testimony of all of these witnesses, that the language to which attention is directed had not that force, but imported merely the fact that the statements were made without inducement held out by the persons to whom these statements were made. While, in several cases, the words "voluntarily" or "free will" were used thus comprehensively, the preliminary testimony went further, and either set forth the circumstances leading to the making of the statements, or declared that they were made without any promises or threats being employed. The admissibility of the evidence to which these examinations were preliminary was for the determination of the court; and there is no reason to suppose that the court misapprehended what seems to us to have been the plain meaning and effect of this evidence.

On the part of the defendant, one Drake testified to having seen the body of the deceased on Saturday morning, and that on the previous evening he saw, in a saloon in Redwood Falls, a man whom he identified as being the same man. He does not appear to have been acquainted with the deceased. On cross-examination, this witness

selected, from several photographs shown him, one which, as he testified, resembled the person he saw in the saloon. This was admitted to be a picture of a brother of the deceased. In rebuttal, the state offered in evidence a photograph of the deceased, shown to have been a correct likeness of him at the time of his death. The receiving of this last evidence is assigned as error. No error is apparent. The force of the evidence would depend upon whether there was a resemblance, and the degree of it, between the picture of the brother (which, the witness had stated, resembled the man he saw in the saloon) and the true picture of the deceased. If there was no resemblance between the two pictures, and the case does not show to the contrary, the fact would have a material and obvious bearing upon the testimony of Drake. The case shows no error in receiving this evidence.

After the evidence had all been introduced, a request was communicated to the counsel for the state and for the defendant, from six of the jurors, that the case be submitted to the jury without argument on either side; and this was done. This constituted no ground for a new trial. The right of counsel to address the jury was not affected; and as the request was directed both to the counsel for the state and for the defence, and as the jury had as yet received no instruction from the court, it could only be a matter of conjecture as to the condition of the jurors' minds at that time. The election of defendant's counsel not to address the jury must be deemed to have been voluntarily made.

The refusal of the sixth requested instruction affords no ground for a new trial. This related to the weight to be given to a "confession" induced by any advantage held out, or harm threatened, by "a person in authority." The defendant had made no confession, and so the court distinctly charged the jury. Nor was there any evidence that any person in authority had offered any inducements of favor or harm. The evidence was all to the contrary. The defendant was not strictly entitled to have the charge given in the form presented; and the general charge of the court as to the weight to be given by the jury to the contradictory statements made by the defendant, to which no exception is taken, was such that we do not feel that the

cause of the defendant was prejudiced for want of any further instruction upon that subject.

The refusal to give the sixteenth requested instruction was justified by the general charge given upon the subject. The request was that proof, to the satisfaction of the jury, of one single fact inconsistent with the defendant's guilt should result in an acquittal. The court instructed the jury correctly as to their duty, if they had any reasonable doubt of the defendant's guilt, explaining properly what is meant by a reasonable doubt, and said, further, in compliance with the defendant's request, that, "in order to justify the inference of legal guilt from circumstantial evidence, the existence of the inculpatory facts must be absolutely inconsistent with Holden's innocence, and incapable of explanation upon any other reasonable hypothesis than that of his guilt;" and, further, in the charge, the court said that, "when a conviction is sought upon circumstantial evidence alone, the state must not only show by a preponderance of evidence that the alleged facts and circumstances are true, but they must be such facts and circumstances as are absolutely incompatible upon [with] any reasonable hypothesis other than the guilt of the accused." The charge given included the substance of what was embraced in the request.

It is contended that the evidence did not justify the verdict. A careful examination of the case satisfies us that the verdict cannot be disturbed on this ground. While the evidence was of a circumstantial nature, the conclusion to which it should lead was for the jury to determine. Without attempting to set forth all of the evidence, we will say that, in addition to the conflicting accounts of the defendant, and the other facts to which we have already referred, the evidence consisted of proof of several circumstances, the nature of which we will briefly indicate to be as follows: That the weapon was discharged very close to the head of the deceased, the hair being burned about the wound; the discovery of appearances of blood upon the defendant's overcoat, which the defendant said must have got on the coat when he was getting the body of the deceased out of the buggy; the appearance of blood, also, in the buggy, and on the robe used in the buggy; the fact that the deceased probably had a roll of money in bills, to the amount of about $100, including a new 20-dollar bill,

and that, while immediately after the homicide the defendant professed to have no more than about four or five dollars in money, he had in his possession some $80 in bills, including a 20-dollar bill; that after his arrest he attempted to conceal this money, so that the sheriff should not find it; that appearances of blood were found on the money; that the defendant, according to his own statement, threw away the pistol which he had before the homicide, and it was not afterwards found; that the bullet was of the proper size to fit the defendant's pistol. The overcoat and robe and money were exhibited to the jury as evidence, and attention was called to the marks claimed to have been blood-stains. Other facts proper for the consideration of the jury were shown.

An examination of the whole case discloses no error for which a new trial should be granted. Some assignments of error were made which are not afterwards referred to in the brief on the part of the defendant. While, in general, we should regard assignments not referred to in the brief as having been waived, we have examined them in this case, but with the result above indicated.

Order affirmed.