[Crim. No. 754. Third Appellate District.—June 13, 1924.]

THE PEOPLE, Respondent, v. BUD MILLER, Appellant.

[1] CRIMINAL LAW—INFAMOUS CRIME AGAINST NATURE—ASSAULT—EVIDENCE—ACCOMPLICE.—In this prosecution for the crime of assault with intent to commit the heinous crime against nature, irrespective of whether or not the victim of the assault was an accomplice, the other evidence was amply sufficient to sustain the verdict of guilty as charged.

[2] ID.—ACCOMPLICE—UNWILLING VICTIM.—In such prosecution, the victim of the assault having been other than a free agent, the rule relating to accomplices did not apply.

[3] ID.—DEGREE OF CRIME—INSTRUCTIONS.—In such prosecution, the court did not err in refusing to give defendant's requested instruction that he "might be convicted of a simple assault," as that would have been a direct instruction to the jury concerning their privilege of finding the defendant guilty irrespective of the testimony, and the duty did not devolve upon the court to modify such erroneous instruction or give any other in its place.

---

2. Conviction on testimony of accomplice, notes, 71 **Am. Dec.** 671; 34 **Am. Rep.** 408; 98 **Am. St. Rep.** 158. See, also, 8 **Cal. Jur.** 172; 1 **R. C. L.** 166.

Who is accomplice, note, 138 **Am. St. Rep.** 272. See, also, 8 **Cal. Jur.** 173, 174; 1 **R. C. L.** 157.

3. See 8 **Cal. Jur.** 316; 14 **R. C. L.** 800.

[4] ID.—SIMPLE ASSAULT—EVIDENCE—INSTRUCTIONS. — In such prose-
cution, the evidence having shown that defendant was clearly
guilty of the offense charged in the information, and the court
having instructed the jury that, in order to find a verdict of
guilty, the burden rested upon the prosecution to establish beyond
a reasonable doubt every element of the offense charged in the
information, the failure or refusal of the court to instruct the
jury that they might find defendant guilty of a simple assault was
not error prejudicial to the rights of defendant.

(1) 36 **Cyc.**, p. 505. (2) 36 **Cyc.**, p. 505. (3) 36 **Cyc.**, p. 505.
(4) 17 **C. J.**, p. 340, sec. 3688.

APPEAL from a judgment of the Superior Court of Sac-
ramento County. John F. Pullen, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. T. McMenamin for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones,
Deputy Attorney-General, for Respondent.

PLUMMER, J.—On the twenty-sixth day of November,
1923, the defendant and appellant was found guilty of the
infamous crime against nature, as charged in the informa-
tion, and from the sentence and judgment pronounced there-
upon the defendant appeals.

The information charges the defendant as follows: "That
on the —— day of September, 1923, and within the limits
of the City of Sacramento, in the State of California, the
said defendant Bud Miller, did then and there, before the
filing of this complaint, and within one year prior thereto,
willfully and unlawfully and feloniously and carnally, upon
the person of one Parley Sheya then and there being, make
an assault with the intent then and there feloniously and
carnally upon the person of said Parley Sheya, to commit
the infamous crime against nature, the said Parley Sheya
being then and there a male person, contrary to the form,
force and effect of the statute of said state in such case made
and provided," etc.

4. See 8 Cal. Jur. 314; 2 R. C. L. 261.

The defendant asks a reversal of said judgment upon two grounds—first, insufficiency of the testimony to warrant the verdict; secondly, that the court erred in refusing to instruct the jury as requested by the defendant.

The testimony in the case is so utterly revolting that we shall not attempt to state it in detail. Suffice to say that it shows every element of the crime charged in the information. It shows that the defendant and one Sheya, upon whom the assault was made, and a witness by the name of Stenzel, were in a room at the Pacific Hotel in the city of Sacramento; that all of the persons in the room had been drinking more or less; that Sheya and Stenzel appear to have been very good friends; that Stenzel took Sheya to the room in the hotel mentioned and put Sheya to bed; that Sheya, at the time of being put to bed, was more or less under the influence of liquor and more or less helpless; that after Sheya had been put to bed the defendant Bud Miller began acting in such a manner as to alarm Stenzel; that Stenzel became so impressed with the idea that Miller was about to attempt the act with which he is charged that he (Stenzel) left the room and went for an officer; that upon the return of the officer, the door of the room was found closed and the officer looked over the transom, and his version of what he saw is as follows: "I stood up on the table, then I was enabled to look over the transom, a glass transom over the top of the door, and this young gentleman here, Sheya, and the defendant were both absolutely naked, both on the bed, Miller was sitting on his knees, with his back to the transom, and Sheya was resting with his head and shoulders on the bed, and his feet almost straight in the air—Miller had his arms underneath his back, the small of Sheya's back, pulling him up close; Sheya originally had been on his back, but pulled so close his feet were standing right up, and Sheya was crying, kind of whining and crying and pleading with Miller to leave him alone, and Miller kept repeating, 'Come on, put it up, put it up,' and Sheya kept pleading, 'No, leave me go,' and whining and crying, and Miller kept repeating, 'Put it up'; . . . suddenly Miller became furious evidently, and jumped out of bed and went to the window where his pants were hanging, and took a pocket-knife out of his pants, then turned, I think, and faced the door, and opening the knife he said,—it was partly to

himself and partly to Sheya, I presume,—'I am going to
cut your G—— d—— heart out right now,' and Sheya says,
'I want you to go away.' Sheya was still on the bed, sort
of crying, and Miller on the floor trying to open the knife;
Miller approached the bed with the knife open, then Sheya
said, 'All right, I will give it to you,' and Miller says, 'No,
you won't give it to me; it is too late now, G—— d—— you;
I'll cut your heart out right now; and he grabbed Sheya
with his left hand by the throat and raised the knife—just
then I kicked on the door . . . and Miller opened the door.''

This witness further testified that ''Sheya was exhausted
and appeared to be coming out of a drunk; he had the ap-
pearance of a man who had been drinking; he seemed more
exhausted than intoxicated; Miller was the much more pow-
erful of the two; he seemed to me a pretty powerful man;
he is a muscular fellow.''

The testimony of Sheya, the victim, is to the same effect
that the defendant was attempting to have sexual inter-
course with him and that he refused and resisted and then
the defendant, as stated by the officer, grabbed a knife and
threatened to cut his heart out. [1] This testimony, and
more along the same line, abundantly justified the jury in
finding a verdict of guilty as charged.

On page 25 of the transcript in this case appears the fol-
lowing:

''(1. *Cloud the issue by introducing Stenzel case.)*

''(2. *'Lay over on your face.')*

''2. Testimony of an accomplice is to be weighed very
carefully.

''3. Def. cannot be convicted upon the uncorroborated tes-
timony of an accomplice.

''4. The corroboration must in and of itself tend to con-
nect with the commission of the offense.

''5. That Def. might be convicted of a simple assault.
''Refused.—Pullen J.''

Upon what has been set forth, it is urged by counsel for
defendant that the judgment herein should be reversed. In
so far as the question of an accomplice is concerned, the
testimony of the officer is sufficient, in and of itself, to jus-
tify the verdict of the jury, whether Sheya be or be not
regarded as an accomplice, but a thorough reading of the
testimony leads us to the conclusion that Sheya was not an

accomplice, and that he was, in every sense of the word, an unwilling victim. **[2]** However, as just stated, this is immaterial, because the officer's testimony alone is sufficient to sustain the verdict. We may state, however, that in the case of *People* v. *Dong Pok Yip,* 164 Cal. 143 [127 Pac. 1031], in cases of this kind, it has been held that, where the victim appears to be other than a free agent, the rule relating to accomplices does not apply. Everything in the testimony, as set out in the transcript, tends to show that Sheya was not consenting to any act of the defendant.

The court did, however, instruct the jury on the subject of accomplices by quoting section 1111 of the Penal Code. It is strongly urged by counsel for defendant that the court erred in refusing to give what has been hereinbefore set out as number 5 of defendant's proposed instructions, which reads as follows: "That def. might be convicted of a simple assault."

The transcript does not clearly show that the court was requested to give any such instruction At most, what we have set forth amounts only to a suggestion to the court to frame instructions covering particular points. **[3]** But assuming that the words quoted were intended as proposed instruction, it is manifest that the court did not err in refusing to give the same. It would have been a direct instruction to the jury concerning their privilege of finding the defendant guilty irrespective of the testimony. As stated in 14 R. C. L. 800, "A court is bound to give any instructions asked for by either party which correctly expound the law upon any evidence before the jury, but may refuse to give an instruction which is erroneous and is not bound to modify it or give any other in its place, for a party cannot, by asking an erroneous instruction, devolve upon the court the duty of charging the jury on the law of the case. It follows, therefore, that a reversal will not be directed because of the refusal to give an instruction unless it is strictly and entirely accurate." A large number of authorities are there cited to support the text just quoted. That an assault is necessarily included in the charge contained in the information in this case may be admitted, but, in order to justify the giving of an instruction to the jury, it would be necessary to so frame the instruction as to present to the jury the question of reasonable doubt in their minds as to whether

the defendant entertained the intent charged in the information, and that if they were satisfied beyond a reasonable doubt from the testimony that the defendant committed the assault but were not satisfied beyond a reasonable doubt and to a moral certainty that the defendant committed the assault with the intent charged in the information, then, and in that case, they might find the defendant guilty only of an assault.

If the defendant desired an instruction to the jury to such effect, it should have been so requested. [4] Again, we do not think the defendant has been prejudiced in the matter of instructions, because the court instructed the jury that, in order to find a verdict of guilty, the burden rested upon the prosecution to establish beyond a reasonable doubt every element of the offense charged in the information, which included, of course, establishing beyond a reasonable doubt that the defendant made the assault with the intent and purpose charged against him. The evidence which we have quoted shows that the defendant was clearly guilty of the offense with which he was charged. In a number of cases it has been held that where the evidence shows the defendant clearly guilty of the offense charged, it is not error for the court to refuse an instruction referring to a lower offense included in the offense charged in the information. (*People* v. *Turley,* 50 Cal. 469; *People* v. *Barney,* 114 Cal. 554 [47 Pac. 41]; *People* v. *Franklin,* 70 Cal. 641 [11 Pac. 797]; *State* v. *Kapelino,* 20 S. D. 591 [108 N. W. 335]; *Brantley* v. *State,* 9 Wyo. 102 [61 Pac. 139].) A number of other cases might be cited to the same effect.

The appellant calls attention to the case of *People* v. *Hickey,* 109 Cal. 275 [41 Pac. 1027], where the offense was the same as in this case. However, it appears by a reading of that case that the testimony concerning one of the occurrences merely disclosed a simple assault, and the court held that it was error to refuse the giving of an instruction on the subject of simple assault. That case we do not think controlling in this instance, because of the dissimilarity of the circumstances. From what we have quoted of the testimony, it is scarcely perceivable how the jury could come to any other conclusion than that the defendant was guilty of the offense just as set forth in the information. Under such circumstances, although we may admit that the instruction

involving the subject of simple assault might have been given, if the proper request had been made therefor, yet, in view of section 4½ of article VI of the constitution, it would be a manifest miscarriage of justice to set aside the verdict finding the defendant guilty as charged, where the testimony abundantly sustains such verdict, simply because the court did not call the attention of the jury to the fact that they might find him guilty of a lesser crime.

The judgment is affirmed.

Finch, P. J., and Burroughs, J., *pro tem.*, concurred.