## STATE v. ROBERT EIDSVOLD.[1]

July 15, 1927.

No. 26,125.

**Conviction sustained by evidence.**
    1. The evidence is sufficient to sustain the verdict that defendant knowingly made a false statement for the purpose of obtaining credit.

**If accused desired explanation of the charge, he should have asked for it.**
    2. The charge submitted the issues clearly and fairly. If defendant deemed a further explanation of any matters desirable, he should have made a request to that effect.

**Admissibility of bankruptcy schedules.**
    3. The bankruptcy schedules were received with defendant's consent and he cannot now question their admissibility.

**Motion to quash indictment insufficient.**
    4. No sufficient ground was shown for quashing the indictment.

**No prejudicial misconduct in counsel's argument to jury.**
    5. The record fails to show any prejudicial misconduct in the argument to the jury.

Criminal Law, 16 C. J. p. 917 n. 67; p. 1059 n. 42; 17 C. J. p. 170 n. 12; p. 211 n. 4 New.
False Pretenses, 25 C. J. p. 650 n. 42; p. 652 n. 53.

Defendant appealed from an order of the district court for Brown county, Olsen, J., denying his motion for a new trial. Affirmed.

*H. W. Volk* and *Pfaender & Glotzbach,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Deputy Attorney General, and *T. O. Streissguth,* County Attorney, for the state.

[1]Reported in 215 N. W. 206.

TAYLOR, C.

Defendant was convicted of having knowingly made a false statement in writing to the Brown County Bank respecting the financial condition of the Minnesota Central Creameries, Inc. for the purpose of obtaining loans, credit and extensions of credit for the use of that corporation. He appeals from an order denying a new trial.

[1] Defendant contends that the verdict is not sustained by the evidence, in that the evidence does not justify a finding that the statement was false or, if false, that he had knowledge of its falsity or that it was made for the purpose of obtaining credit.

Defendant, his two brothers and his father organized and incorporated the "Eidsvold Creamery Company" which operated a creamery in the city of Minneapolis for many years. In 1919 or 1920, they organized and incorporated the "Minnesota Central Creameries, Inc." which established a creamery and carried on a creamery and produce business in the city of New Ulm. The three brothers and their father owned all the stock of both companies and were directors and officers of both companies. For convenience these companies will be designated as the Minneapolis company and the New Ulm company. Defendant had the active management of the Minneapolis company and the Minneapolis business. His brother Fred had the active management of the New Ulm company and the New Ulm business. In the spring of 1924, the Minneapolis company sold its business to the Twin City Creamery Company, but retained its real estate and certain of its personal property. The New Ulm company had become heavily involved and among other liabilities owed some $60,000 to the Brown County Bank. Fred Eidsvold, who had been the manager of the New Ulm company, became ill, and in the fall of 1924 defendant went to New Ulm and took charge of the business of that company. On June 30 and July 1, 1925, the four stockholders of the companies, acting first in their capacity as stockholders and then in their capacity as directors, authorized the consolidation of the two corporations by transferring the assets of the Minneapolis company to the New Ulm company, and directed that proper conveyances be made to

accomplish the transfer. The personal property of the Minneapolis company seems to have been taken over by the New Ulm company, but no conveyance of the real estate of the Minneapolis company was ever made.

In March, 1925, the New Ulm company employed a firm of accountants to audit its books and to install a system for making monthly statements of the condition of the company. The first of these statements was made at the end of March, the second at the end of May, the third at the end of June, and the fourth at the end of July, 1925. The two last statements included the assets of the Minneapolis company as assets of the New Ulm company.

The indictment is based on the statement made at the end of July which was presented to the bank by defendant. The state claims that this statement gave a false and grossly inflated value to a number of the items listed therein as assets. The most important of these items are:

| | |
|---|---|
| Plant and Equipment | $147,690.95 |
| Additions to Buildings | $59,665.05 |
| Additions to Real Estate | $16,000.00 |
| Inventories (stock and merchandise) | $107,593.27 |

The statement lists the following items as making up the sum of $147,690.95, given as the value of plant and equipment:

| | |
|---|---|
| Real Estate | $10,000.00 |
| Buildings | $53,022.63 |
| Factory Equipment | $75,150.00 |
| Office outfit, autos, trucks, horses, etc. | $9,518.32 |

The witnesses for the state place the value of the real estate and buildings listed as $53,022.53 at about one-third the amount listed; and even the witnesses for defendant place the value considerably below the amount listed. Items of factory equipment amounting to $11,592.37 are listed in addition to the sum of $75,150 above given, making the total value of factory equipment as listed

$86,742.37. The salesman who sold the greater part of the equipment to the company placed the value of the equipment at about one-fifth of the value listed. The witness for defendant said that the entire equipment could be replaced for $50,000. The evidence for the state placed the value of stock and merchandise listed as $107,593.27 at less than one-half that amount.

Additions to buildings listed as $59,665.05 and additions to real estate listed as $16,000, making $75,665.05, include $73,440 for the buildings and real estate of the Minneapolis company. $62,440 of this sum is listed as the value of the creamery building of the Minneapolis company and the land on which it is located. The evidence for the state places the value of this land and building at less than $20,000.

The state further claims that the real estate of the Minneapolis company ought not to have been included in the statement for the reason that it was never conveyed to the New Ulm company and when the two companies were adjudged bankrupts was not listed by defendant as the property of the New Ulm company but as the property of the Minneapolis company. Defendant claims that he believed this property had been transferred to the New Ulm company and therefore should be included in the statement. Conceding this claim to be true and that there was no culpability in including this property in the statement, yet we find ample evidence to justify the jury in finding that the statement was false. Defendant urges that the state ought not to have directed its evidence to the value of certain particular items but to the value of the property as a going concern. It is sufficient to say that the items and values to which the state directed its evidence were items and values given by the statement itself.

Defendant further contends that the evidence does not justify a finding that when he delivered the statement to the bank he had knowledge of its falsity. He urges that the values given were the values at which the several items had been carried on the books. Also that values are a matter of opinion in which men may honestly differ. Also that the witnesses for the state were not competent

to determine the values which they gave. We cannot agree with him in this last claim. We think their competency was sufficiently shown. Even the witnesses for defendant placed the value of the questioned items below that given in the statement. And the disparity between the values given by the witnesses for the state and those given in the statement were so great that the jury could well find that it could not be accounted for by any honest differences in judgment. Defendant was an officer of both companies. He had the management of the Minneapolis company until it sold out its business and quit operating. Thereafter he had the management of the New Ulm company. He had full knowledge of the property and business affairs of both companies. The evidence clearly made the question of his knowledge of the falsity of the statement a question for the jury.

The claim that the evidence does not justify a finding that the statement was made for the purpose of obtaining loans, credit, or extensions of credit requires but little consideration. The company was then indebted to the bank in a large amount. Thereafter loans were extended and the indebtedness largely increased. The jury could well infer that the statement was furnished for the purpose of obtaining such favors.

[2] The court submitted the issues to the jury in a full, clear, and correct charge which was entirely fair to the defendant. The remark that "the procuring of credit need not be the sole or only purpose" of making the statement, and the further remark that no deeds had been shown conveying the real estate of the Minneapolis company to the New Ulm company and that title "would not pass until deeds are delivered," were both true. If defendant deemed an explanation of the situation resulting from the failure of the Minneapolis company to execute conveyances of its real estate desirable, he should have made a request to that effect. State v. Sailor, 130 Minn. 84, 153 N. W. 271; State v. McCarthy, 159 Minn. 48, 197 N. W. 961.

[3] Defendant claims that the schedules verified and filed by him in the bankruptcy proceedings were not admissible in evidence

because the bankruptcy proceedings were instituted by creditors and were not voluntary. We have no occasion to consider this question, for defendant consented to the admission of the schedules.

[4] The motion to quash the indictment was properly denied. It was based on affidavits which, under well settled rules, were not sufficient to. establish grounds for holding indictments invalid. State v. Ernster, 147 Minn. 81, 179 N. W. 640; State v. Fruen, 162 Minn. 351, 202 N. W. 737.

[5] Defendant alleges misconduct on the part of the county attorney in his argument to the jury. The evidence is voluminous and took a wide range. The county attorney insists that his reference to the "kiting of checks" was justified. However he desisted when objection was made, and the court explained the purpose for which the checks in question had been received and directed the jury to disregard the remarks made. We think no prejudice resulted from this incident and it is not particularly urged. At the close of the argument of the county attorney defendant's attorney stated: "The defendant excepts to the remarks of the county attorney to the jury 'that the public expects a conviction from this jury.'" No such objection was made during the argument. The language used by the county attorney was not taken down. The court was not asked at any time to determine whether he had made that statement. He asserts in the state's brief that he did not. Whatever he may have said is not incorporated in the settled case, and therefore is not before this court for consideration.

A careful examination of the record discloses nothing which would justify a reversal and the order appealed from is affirmed.