## STATE v. CHARLES STEVENS.[1]

October 16, 1931.

No. 28,597.

*Neil Hughes,* for appellant.

*Henry N. Benson,* Attorney General, *Edward J. Goff,* County Attorney, and *Arthur Markve,* Assistant County Attorney, for the state.

[1]Reported in 238 N. W. 673.

WILSON, C. J.

The appeal is from an order denying a motion for a new trial.

Defendant was indicted for manslaughter in the first degree and convicted of manslaughter in the second degree. The crime was committed June 6, 1930, and defendant was convicted October 28, 1930. On November 8, 1930, the county attorney filed an information against him as to a previous conviction (burglary in the third degree) and to this he pleaded guilty. He was sentenced to the state penitentiary for 15 years, and judgment was so entered. A bill of exceptions was allowed.

A motion for a new trial was made returnable January 5, 1931. It was denied February 17, 1931. On the same day the court ordered that the sentence and judgment be vacated and modified so as to make the term of penal servitude five years only. Judgment was so entered. Thereafter defendant made a second motion for a new trial returnable April 18, 1931, upon all the grounds stated in the first motion for a new trial and upon the grounds of newly discovered evidence. On April 20, 1931, the court dismissed the motion upon the ground that "no bill of exceptions or settled case has been presented to this court for allowance."

Defendant has attempted to appeal: (1) From the verdict of the jury; (2) the original judgment; (3) the order denying the first motion for a new trial; (4) the order for an amended judgment; and (5) the order dismissing the second motion for a new trial. Number one is nonappealable.

A motion for a new trial on the ground of newly discovered evidence is usually accompanied by affidavits showing the newly discovered evidence as well as the facts evidencing diligence and showing that the newly discovered evidence could not have been discovered before the trial by the exercise of reasonable diligence.

The second motion for a new trial had attached thereto papers marked exhibit A to exhibit E, inclusive, and the motion recites that these papers are certain things. Their form and substance would corroborate the recital. It is claimed that one of them contains extracts from testimony given in the federal court, another from the testimony given by one Frank Corneaby preliminary to

the sentence in the district court, another the testimony of a witness Beatty given on the defendant's preliminary examination, and another the testimony of said Beatty given in the district court upon the trial of said Frank Corneaby. None of these exhibits are properly authenticated. They were not put in such form as to constitute legal proof of anything. We take it that the trial court was of the opinion that these exhibits should have been presented to the court for allowance in the form of a settled case or bill of exceptions. We are of the opinion that they should have been accompanied by affidavits showing what they in fact were. Affidavits of counsel or someone else should have asserted facts claimed to constitute the newly discovered evidence. In the absence of proper authentication, the court had no way of knowing what these exhibits in fact were. The showing made upon this phase of the motion was insufficient, and it was properly dismissed.

The other assignments of error are duplicates of assignments contained in the first notice of motion for a new trial. Having been so passed upon in the first motion, they cannot, like a motion based upon newly discovered evidence, as a matter of right, again be heard without at least obtaining permission of the court. 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7080; Barrett v. Smith, 183 Minn. 431, 237 N. W. 15. This was not done.

We think, however, that since the judgment was vacated and a new judgment entered, defendant is entitled to have us review the merits of his assignments of error contained in the first motion for a new trial and which were passed upon by the trial court.

*Sufficiency of the evidence.* One Frank Corneaby drove an automobile into a filling station for gasolene. His wife sat beside him. Defendant, who owned the automobile, was on the rear seat. Both Corneaby and the defendant were intoxicated. At the time, one Henry Wollin was on the opposite side of the pumps receiving gasolene in his Ford. Two men, the proprietor and an attendant, were in charge of the station. The proprietor served Wollin, and the attendant served the other car. Wollin was necessarily out of his Ford. Corneaby was on the ground and paid for five gallons of gas. Defendant got out of his car and asked to have the gas

bought by Corneaby measured after it was in the tank, though it had been measured by the bowl. He called for the proprietor and "commenced cussing around." The proprietor ordered him on his way; took hold of him to put him out of the office, and Corneaby said: "Don't hit him, he is drunk." Apparently offended by defendant's conduct, Mrs. Corneaby got out of the car and walked away. Mr. Corneaby took the car and brought her back, defendant having refused to accompany him, and stopped the car "right in behind Wollin" (Wollin's car). While Corneaby was so in the car, defendant provoked a row with Wollin, who was detained by the proprietor from accepting defendant's invitation to come out of the office and fight. Wollin was inoffensive. A moment later Wollin was outside the office of the station near the pumps talking with defendant, who then drank from a bottle, and as Corneaby was returning he got out of the car and went a few feet to the two men, received the bottle from defendant and drank. Either defendant or Wollin produced the bottle. Perhaps it was the latter. Defendant, then refusing to go with Mr. and Mrs. Corneaby, went into the office. Corneaby went in to get him. Mrs. Corneaby hollered. Wollin was near the car in which she was sitting. Corneaby and defendant hurried out. It was suggested that Wollin had insulted Mrs. Corneaby, which she later denied. Defendant grabbed Wollin, tore his vest badly, and both went to the ground; defendant hit Wollin, and Corneaby kicked him. When defendant grabbed Wollin by the vest Corneaby grabbed him by the neck, trying to choke him. Corneaby was also down on one occasion. Defendant and Wollin "got up and kept staggering and falling down * * *. Stevens [defendant] hit him [Wollin] and he fell on this sign." In this attack by defendant, Corneaby kept "following them up." Wollin went down three times, and the last time defendant knocked him down. In one fall Wollin received a cut from the sign on his face or head. On one occasion defendant jumped on top of Wollin when he was down and jerked his head up and down on the ground and hit him a few times in the face. The ground was hard and consisted of stone, concrete, and sand. Corneaby kicked Wollin at least twice when he was down, once in the side and once in

the head.   Because of a belated interference by the proprietor, Wollin was permitted to get up.   He walked a few feet to a place about two feet from the office door and leaned up against a post with his hands to his head.   He said nothing.   He had said nothing during the attack and seemingly had merely been trying to keep the two off him more than anything else.   While Wollin was so standing with his hands to his head and with the defendant near by, Corneaby ran at Wollin and hit him on the head.   Wollin fell the fourth time, full length, and did not move.   The proprietor said:   "I guess you have done it now."   Defendant and Corneaby got in their car and left.   Wollin was unconscious.   Others took care of him, but two days later he died.

The evidence does not establish any definite interval or lapse of time between the time when Wollin was permitted to get up and the time when he was knocked down by Corneaby.   It would seem that there was just time enough for the parties to walk 10 to 15 feet—just a moment.   As far as the two offenders were concerned, it was apparently a continuous drunken brawl.

The doctor who made an autopsy found three distinct fractures of the skull.   One was over each eye, and one was on the left side of the head.   The doctor gave his opinion that the blows to the head caused the death and that there were three blows to the head, any one of which was sufficient to cause the death.

The claim of insufficiency of the evidence is based upon the assertion that the attack upon Wollin, in which the defendant participated, had ended, and that Corneaby committed an independent fatal act for which defendant had no responsibility.   It may be that defendant did not know that Corneaby was going to hit Wollin the last time.   Nor did Corneaby know that defendant was going to smash Wollin's head on the concrete ground when he was on top of him.   Both apparently did know that they were both attempting wrongfully to punish Wollin.   Obviously they were carrying on a common purpose.

The law is that "every person concerned in the commission of a crime, whether he directly commits the act constituting the offense,

or aids and abets in its commission, and whether present or absent, * * * is a principal, and shall be indicted and punished as such." G. S. 1923 (2 Mason, 1927) § 9917.

The court instructed the jury in substance that if after the row in which both the defendant and Corneaby were engaged Corneaby alone made an independent, fatal assault upon Wollin, defendant could not be convicted. The charge other than hereinafter mentioned was correct and appropriate to the record. The jury concluded that Corneaby did not so act. The evidence is quite conclusive, or at least satisfactory, to sustain the conclusion which the jury reached. The three distinct skull fractures, any one of which, according to the evidence, was sufficient to cause the death, almost preclude the argument that the conduct of defendant is not directly responsible for one or more of such fractures. The evidence is sufficient to justify the jury in concluding that Corneaby and defendant jointly carried on the assault; both did things to facilitate it; that it was a common enterprise from the time that defendant commenced it to its termination by the last blow from Corneaby; and that defendant under the circumstances was guilty as convicted. The evidence sustains the conviction.

■ Appellant assigns as error that portion of the court's charge permitting the jury to find the defendant guilty of manslaughter in the second degree over its objection and exception.

Where it is clear that a particular crime has been committed and there is no evidence justifying a verdict of any lesser degree than the one charged in the indictment, it is the duty of the court to instruct the jury that it is their duty to convict of the particular crime or acquit. State v. Nelson, 91 Minn. 143, 97 N. W. 652; State v. Morris, 149 Minn. 41, 182 N. W. 721. Where there is no evidence to justify a verdict in a lesser degree, it should not be submitted to the jury. State v. Potoniec, 117 Minn. 80, 134 N. W. 305. Where however the evidence may be construed as covering a lesser degree of a crime charged, it is the duty of the court to submit that degree. State v. Tuomi, 167 Minn. 74, 208 N. W. 528. But of course the defendant must protect the record if necessary.

State v. Sailor, 130 Minn. 84, 153 N. W. 271; State v. McCarthy, 159 Minn. 48, 197 N. W. 961; State v. Shansy, 164 Minn. 10, 204 N. W. 467; State v. Eidsvold, 172 Minn. 208, 215 N. W. 206.

Manslaughter is one of the crimes arising from homicide, which is killing of a human being; and one of the circumstances under which homicide is manslaughter in the first degree is when it is committed without a design to effect death, in the heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon. G. S. 1923 (2 Mason, 1927) § 10074. Such homicide is manslaughter in the second degree when committed without a design to effect death, in the heat of passion, but not by deadly weapon or by use of means either cruel or unusual. G. S. 1923 (2 Mason, 1927) § 10078. The court properly submitted the second degree, and the jury convicted the defendant under that charge and presumably upon the theory that the act was committed without a design to effect death, in the heat of passion, not by a deadly weapon, nor by the use of means either cruel or unusual. We approve the charge relative to the second degree.

■ The defendant assigns in this court as an error a portion of the charge which is as follows:

"In order to justify a conviction of this defendant of manslaughter in the first or the second degree, it must be established by proof beyond a reasonable doubt that in assaulting this man the acts of the defendant must have contributed, that is, it must have been part of a series of acts, in which they acted together or the defendant himself alone, that brought about the death of this man Wollin. Now to make that statement maybe more easily understood, if these two men, acting together, and there can be no question but they did act together, and that each are responsible for their acts in aiding and abetting the other; if this conflict or fight, I think you might describe it as that, had ceased and after it had ceased one of the parties came back, unaccompanied and unaided and unassisted by the other and struck the blow that brought about the death of the man Wollin, then the party who did not participate would not be guilty of manslaughter in either the first or second

degree, and the duty is upon—the burden is upon the state of establishing that his own and the acts of Corneaby, one with the other, acting together under such circumstances as to make them principals under the definition I have given you, brought about the death of this man Wollin. If however you should find as a matter of fact that the state has not established the guilt of the defendant beyond a reasonable doubt of either manslaughter in the first or second degree, if you should find that the acts of Corneaby alone was what brought about the death of this man Wollin, then of course the defendant here could be held chargeable simply for his own acts and the acts of Corneaby when working together, and the question then would be whether or not he was guilty in law of assault in the second degree as I have defined it to you."

The alleged vice in this charge is the presence of the clause "and there can be no question but they did act together." Perhaps this language should not have been used. We assume that it was used inadvertently. Counsel did not direct the court's attention to it or take any exception to it at the time of the trial. It follows under the well established rule of this court that it cannot now be assigned as reversible error. Aside from this rule, however, we see no chance for the jury to misunderstand or to be misled by the charge as given.

The numerous other assignments of error have been considered by the court and found without merit, and we are of the opinion that they do not call for a detailed discussion.

Affirmed.