## STATE v. CHARLES E. NELSON.[1]

January 22, 1937.

No. 31,110.

*Field & Field,* for appellant.

*Harry H. Peterson,* Attorney General, *Roy C. Frank,* Assistant Attorney General, and *W. P. Berghuis,* County Attorney, for the State.

[1]Reported in 271 N. W. 114.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from an order denying his motion for a new trial and from the judgment convicting him of the crime of sodomy.

The information charged that defendant, at a stated time and place, "did wilfully, unlawfully, and feloniously carnally know a male person, to-wit: [naming individual] by and with the mouth, against the form of the statute," etc. That the evidence abundantly establishes defendant's commission of the crime charged in the information cannot be doubted by anyone who will take the time to read the record. Rather and only, we think, the question is whether a written confession, admittedly made by defendant, was properly received in evidence. Against its admissibility, defendant at the trial and since has directed his attacks, claiming that it was not voluntarily made; that it was procured by means of duress, intimidation, and promises of favor or reward. Before its admission, the court, in the absence of the jury, heard the testimony of the witnesses for the state who were present at the time it was made. Defendant asked leave to testify in opposition to the evidence so adduced on the preliminary question of its admissibility, but, as set forth by him, "reserving, however, that the defendant does not now nor thereby waive his right under the law not to be a witness against himself, in a criminal proceeding brought against himself, or to be compelled to testify against himself, and for the sole purpose of proving the facts prior to the signing of exhibit 1 [the confession] and to show the involuntary character thereof as above stated, for the purpose of laying a foundation for an objection to the introduction thereof." The request was refused, the court being of opinion that if defendant took the stand he would thereby subject himself to cross-examination.

After the court had ruled that the confession was admissible in evidence, the jury was recalled and the testimony received of the witnesses present when the confession was made. It was shown that defendant at the time in question was brought to a room in a hotel at Fergus Falls occupied by one Fleming, a postoffice inspector. Present with him was the county sheriff. Soon after coming into the room defendant was informed of the accusation

made by the boy mentioned in the information. This was in writing and was shown to defendant. He was told that upon the strength of this statement he would be arrested. He was questioned over a period of something like an hour and a half. At first he denied everything pertaining to the wrongful act but ultimately admitted the facts, which were thereupon written down by Mr. Fleming in typewritten form upon his portable typewriter. Defendant was sworn by Mr. Fleming, and at the trial, testifying in his own behalf, freely admitted that he understood he was under oath when he made and signed the confession; and that he then stated that everything therein was true. The sheriff corroborated Mr. Fleming. Both claimed that there was no duress, no threat made of any kind, nor any inducement held out. After this confession had been thus made, signed, and witnessed, the parties went to the office of the county attorney, where the instrument was handed to him, and he, after reading it, asked defendant, "Is this true?" to which defendant answered, "Yes, it is."

There is much more that could be said respecting other evidence in the case. The subject matter in its very nature is difficult to handle. It is enough for everyone concerned to say that the evidence well establishes the offense charged.

Determination of this appeal hinges upon three issues: (1) Whether the confession was properly admitted in evidence; (2) whether the evidence taken as a whole justifies the verdict rendered; and (3) whether the court erred in refusing to submit to the jury the lesser offenses of indecent assault and assault in the third degree.

The first two issues may be discussed together. If the confession was properly admitted in evidence, then, as has been heretofore remarked, the record leaves no doubt of the propriety of the resulting verdict.

It will be noted that the state assumed the burden of proving that the confession was voluntary. Evidently the county attorney was of opinion that such was the proper procedure by virtue of what this court said in State v. Staley, 14 Minn. 75 (105). The

decisions in other jurisdictions are divided. By many of the courts it is held that the burden of proving that a confession is involuntary rests upon defendant. The decisions *pro* and *con* are found in 38 A. L. R. 116, and 16 C. J. 733.

The order of proof is ordinarily a discretionary matter with the trial court. State v. Grear, 29 Minn. 221, 13 N. W. 140. The court there held that it was not necessary that the evidence of the commission of the crime itself should first be introduced before the confession was received in evidence.

Another rule just as firmly established is that: "Whether a confession was made under such circumstances as to render it admissible is a question for the determination of the trial court, and its action will not be reversed on appeal unless manifestly contrary to the evidence." 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 2462. State v. Staley, 14 Minn. 75 (105); State v. Holden, 42 Minn. 350, 44 N. W. 123. Also of importance is the obvious fact that at this stage of the proceedings the state was establishing its case. Until it had done so defendant was not in position to put in any evidence in his own behalf, except as he might by cross-examination bring out facts to his own advantage. At most, his request was only a matter calling for the court's exercise of its judicial discretion. Surely no one will maintain the contrary. He, in due time and in the ordinary course of procedure, took the stand and testified in his own behalf. Of what legal right was defendant thus deprived of exercising? Our criminal procedure, liberal as it is in this state, does not, fortunately for the public good, permit a defendant to determine its course. The question always is: Was the defendant accorded a fair trial, one where all his legal rights were protected? We can find nothing in this case justifying the view that the court acted "contrary to the evidence."

The court instructed the jury on this phase as follows:

"There has been introduced in evidence in this case a document identified as exhibit 1 and referred to as a confession. It is the law of this state that a confession on the part of a defendant shall not be sufficient to warrant his conviction without evidence that

the offense charged has been committed. A confession purporting to be that of the defendant and claimed to have been signed and thereafter acknowledged by him has been introduced in evidence in this case. It has been identified by witnesses for the state whose testimony you will recall, and the state contends that it was the voluntary act of the accused. The defendant denies that allegation and has testified that it was not his voluntary act but that it was obtained by duress, threats and promises made by those in author-ity. * * *

"In weighing the evidence relative to this purported confession you will consider the circumstances under which the confession was made as disclosed by the testimony, and you will then determine from all of the evidence in the case and the law given to you by the court whether it was voluntary or involuntary. * * *

"If you find from the evidence in this case beyond a reasonable doubt that the confession in this case was voluntary, then you will consider that fact in determining the weight to which it is en-titled in your deliberations. If you find that the confession was not voluntary but that it was obtained by duress, by fear or by promise of favor or reward, then you will consider that fact in determining the weight to which it is entitled; and in either event you will be governed by the rules of law given to you by the court and the evidence which you have heard during the trial of this case."

It is well to bear in mind that this confession was procured in a hotel room, where any impropriety would likely lead to some dis-turbance and consequent prompt interference or at least bring knowledge to other guests or the management. Everything points to an orderly and proper procedure on the part of these two men to get at the truth. Defendant was at a place where by reason of his long residence and wide acquaintance no improper means could have come into play without someone knowing of it. He was a native of the county and had always lived there except during his time of army service. Over a period of 38 years he had lived in Fergus Falls, and there, too, over a period of many years, he held various positions of trust in the post office. At least two married sisters lived there.

The post-office inspector who had this matter in hand was, as we have already stated, a man well along in years, much older than defendant, and physically crippled. Defendant claims that the threats of which he complains were so made when the sheriff was momentarily absent from the room. Yet when the sheriff returned, he made no mention of anything having happened. Further than that, after he had made and signed the confession and when in the county attorney's office he was asked by the latter whether the statements made in the confession were true, he then remarked, "Yes, it is true." There is also testimony of the sheriff and of Mr. Fleming that when he finally admitted the truth, he said: "Well, it is true but I hate to admit it." This statement was repeated several times. That statement in and of itself carries conviction of its truth. No innocent man of defendant's mental and physical capacity and in the circumstances here appearing, could have made it unless true. Of course this was an offense that any person, no matter how depraved in morals or decency, would naturally hate to admit.

The instrument itself is short. There is nothing included in it requiring study, nothing obscure or involved. Defendant is a man of mature years. He has had much experience in life. For some 16 years he had been a post-office clerk and assistant in the Fergus Falls post office. As such, he was under civil service rules. He had met Fleming before and knew his official position. He well knew that Fleming did not come into the picture in any other fashion than as an inspector for the post-office department. In the line of his duties, as such, he had interviewed some of the boys whom defendant had been in the habit of taking out on automobile trips. The particular boy here involved with defendant had signed a written statement wherein he had set forth what he claimed took place. This was not only read to defendant before he signed the confession but also read by him. Mr. Fleming wrote defendant's statements on his portable typewriter as the facts gained from the conversation were developed.

We have no hesitancy in finding that the record not only sustains but virtually compels the result reached by the jury.

■ A more difficult question is whether the court erred in denying defendant's motion to have the lesser crimes of indecent assault and simple assault submitted to' the jury. This request came in the forenoon of the last day of the trial. Counsel had made their closing arguments to the jury the day before. Until the court was about to charge the jury defendant had not indicated that he thought any other crime was involved than the one for which he was on trial. We have heretofore quoted the essential elements of the information. The statute, 2 Mason Minn. St. 1927, § 10183, under which it was drawn, provides:

"A person who carnally knows in any manner any animal or bird, or carnally knows any male or female person by the anus or by or with the mouth; or voluntarily submits to such carnal knowledge; or attempts sexual intercourse with a dead body, is guilty of sodomy, and is punishable with imprisonment in the state prison for not more than twenty years, and any sexual penetration, however slight, shall be sufficient to complete the crime."

When defendant moved to have the lesser crimes submitted the state objected, claiming that the request came too late. The court, however, did not rule upon that theory but said: "I will instruct the jury in effect that if any of the elements of the crime of sodomy are lacking the verdict must be for the defendant." Defendant's requests with respect to what is here under discussion were made orally. We may assume that the requests were seasonably made and in adequate form. But it is interesting to note defendant's views on this phase during the course of the trial. When one of the boys in this party was being examined by the county attorney, counsel for defendant objected to a question which was deemed extraneous to the charge made in the information. This appears:

"Q. Could you see whether or not there was anything going on there in the car? Mr. Field: Just a minute now. That is objected—I object to this question upon the ground that it is irrelevant and immaterial and does not—it is not part of the act of which the defendant is accused in this lawsuit, the evidence already showing by the testimony of [naming boy involved] that it is claimed

the act took place in a grocery store and not in the automobile, and that the admission of evidence of anything that went on in the car on the record that we have at this time is irrelevant and immaterial and prejudicial." The court overruled the objection, and the witness answered: "Well, there was not much going on in the car, but they went over to the grocery store to get some oranges and bananas and they were gone for half or three-quarters of an hour."

The matter was not gone into any further, and not a single one of the other boys was called upon to state what he observed out of the ordinary while they were in the car. It is therefore very clear to us that upon this record the only issue tried and the sole theory of trial below was based upon the information alone and not upon any lesser or different offense.

The sodomy statute is obviously limited in its scope and purpose. There are no degrees as to this offense. In the books it is usually referred to as the "infamous crime against nature."

An assault to carnally know or to take indecent liberties does not appear to be within its purview. Every assault must have as one of its essential elements *violence*. This court in Johnson v. Sampson, 167 Minn. 203, 205, 208 N. W. 814, 815, 46 A. L. R. 772, said:

"Actual physical contact is not, but violence, threatened or offered, is an essential element." (Citing many cases.)

■ Am. Jur., Assault and Battery, § 2, defines assault in several ways.

"Generally speaking, an assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present. * * * It is frequently defined as an intentional attempt, by violence, to do an injury to the person of another, and as any attempt to commit a battery, or any threatening gesture showing in itself or by words accompanying it an immediate intention, coupled with a present ability, to commit a battery. As stated by the American Law Institute, an act, other than the mere speaking of words, which directly or indirectly is a legal cause of

putting another in apprehension of an immediate and harmful or offensive contact renders the actor civilly liable, if thereby he intends either to inflict a harmful or offensive contact, or to put one in the apprehension thereof and the act is not consented to by the other or is not otherwise privileged. Not every laying on of hands constitutes an assault, however. The attempt, or the force used, if it proceeds beyond the stage of a mere attempt, must be unlawful. The intention to do harm, or an unlawful intent, is of the very essence of an assault, without which there can be none."

It is not the normal sexual act that this statute aims at. Rather and only it is the unnatural and prohibited ways of satisfying sexual desires that the statute is designed to punish. Thus husband and wife, if violating this statute, could undoubtedly be punished, whereas the normal sexual act would not only be legal but perhaps entirely proper.

Here there was no proof of any assault, actual or potential. If counsel thought any assault was involved, he undoubtedly would have been compelled to surrender his claim that the boy was an accomplice. In that event the state's case on such phase would have been much easier to maintain. The entire course of trial not only indicates but we think compels the conclusion that the only offense involved was that charged in the information. The record leaves no doubt that if defendant was guilty at all it was because he had committed sodomy. As said by the trial court: "To constitute indecent assault the carnal act would necessarily be absent. * * *. If he did not commit the carnal act, the jury was told to find him not guilty." In State v. Broughton, 154 Minn. 390, 392, 192 N. W. 118, 119, this court affirmed a conviction where the trial court had refused to include in its charge a lesser degree or an included offense. The evidence was such that, in the language of the court, "The defendant was altogether guilty or not guilty at all." That is exactly the situation here. In State v. Jenkins, 171 Minn. 173, 174, 213 N. W. 923, 924, the court said:

. "We are of the opinion that defendant, if guilty at all, was guilty of a more serious offense. * * * If defendant did not indulge

in sensualization he did nothing. Hence the court properly refrained from giving such instruction."

See also State v. Coon, 170 Minn. 343, 212 N. W. 588; State v. Stevens, 184 Minn. 286, 238 N. W. 673.

Cases from other jurisdictions on the question here being discussed sustain the position we have taken. Thus in White v. Commonwealth, 115 Ky. 473, 474, 475, 73 S. W. 1120, the accused sought reversal on the theory that the trial court erred in failing to give instructions covering the law of assault and battery, claiming that such offense was included in the indictment. The supreme court on appeal said:

"No assault and battery is charged against the defendant, except as a part of his assault to commit the crime of sodomy. This is the offense sought to be punished, and we think the court did not err in failing to instruct the jury for any other offense."

In People v. Miller, 67 Cal. App. 674, 679, 228 P. 68, 70, a similar question arose. The court said:

"We do not think the defendant has been prejudiced in the matter of instructions, because the court instructed the jury that, in order to find a verdict of guilty, the burden rested upon the prosecution to establish beyond a reasonable doubt every element of the offense charged in the information, which included, of course, establishing beyond a reasonable doubt that the defendant made the assault with the intent and purpose charged against him. The evidence which we have quoted shows that the defendant was clearly guilty of the offense with which he was charged. In a number of cases it has been held that where the evidence shows the defendant clearly guilty of the offense charged, it is not error for the court to refuse an instruction referring to a lower offense included in the offense charged in the information." (Citing cases.)

We accordingly conclude that defendant has been fairly tried, that there are no reversible errors in the record, and that it would be a manifest miscarriage of justice to set aside the verdict of the jury.

Order and judgment affirmed.

MR. JUSTICE PETERSON, having been of counsel for the State when the case was argued and submitted, took no part in its consideration or decision.